## UNITED STATES *v.* MARTINEZ-SALAZAR

No. 98–1255.   Argued November 29, 1999—Decided January 19, 2000

306

GINSBURG, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, SOUTER, THOMAS, and BREYER, JJ., joined. SOUTER, J., filed a concurring opinion, *post*, p. 317. SCALIA, J., filed an opinion concurring in the judgment, in which KENNEDY, J., joined, *post*, p. 318.

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the briefs were *Solicitor General Waxman, Assistant Attorney General Robinson, David C. Frederick,* and *Richard A. Friedman.*

*Michael D. Gordon,* by appointment of the Court, 527 U. S. 1054, argued the cause and filed a brief for respondent.*

JUSTICE GINSBURG delivered the opinion of the Court.

In *Ross* v. *Oklahoma,* 487 U. S. 81 (1988), this Court reaffirmed that "peremptory challenges [to prospective jurors] are not of constitutional dimension," *id.,* at 88; rather, they are one means to achieve the constitutionally required end of an impartial jury. We address in this case a problem in federal jury selection left open in *Ross.* See *id.,* at 91, n. 4. We focus on this sequence of events: the erroneous refusal of a trial judge to dismiss a potential juror for cause, followed by the defendant's exercise of a peremptory challenge to remove that juror. Confronting that order of events, the United States Court of Appeals for the Ninth Circuit ruled that the Due Process Clause of the Fifth Amendment requires automatic reversal of a conviction whenever the defendant goes on to exhaust his peremptory challenges during jury selection. 146 F. 3d 653 (1998).

We reverse the Ninth Circuit's judgment. We reject the Government's contention that under federal law, a defendant is obliged to use a peremptory challenge to cure the judge's error. We hold, however, that if the defendant elects to cure such an error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any rule-based or constitutional right.

---

*David A. Reiser* and *Barbara Bergman* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging affirmance.

# I

Respondent Abel Martinez-Salazar and a codefendant were tried by a jury in the United States District Court for the District of Arizona for a variety of narcotics and weapons offenses. As Rule 24(b) of the Federal Rules of Criminal Procedure instructs, the District Court allotted the codefendants 10 peremptory challenges exercisable jointly in the selection of 12 jurors. Martinez-Salazar and his codefendant also received an additional peremptory challenge exercisable in the selection of an alternate juror. See Fed. Rule Crim. Proc. 24(c).

Prior to jury selection, the District Court gave the prospective jurors a written questionnaire to complete. See 146 F. 3d, at 654–655. A potential juror, Don Gilbert, indicated on his questionnaire that he would favor the prosecution. *Id.*, at 655. In a discussion with the trial judge, Gilbert restated: "[A]ll things being equal, I would probably tend to favor the prosecution." *Ibid.* The judge explained that the burden of proving a person guilty rests with the Government. Gilbert said he would not disagree with that proposition. The judge next asked Gilbert whether, if he were a defendant facing jurors with backgrounds and opinions similar to his own, he thought he would get a fair trial. Gilbert answered: "I think that's a difficult question. I don't think I know the answer to that." *Ibid.* Martinez-Salazar's counsel then inquired whether Gilbert would feel more comfortable erring on the side of the prosecution or the defense. Gilbert responded: "I would probably be more favorable to the prosecution. I suppose most people are. I mean, they're predisposed. You assume that people are on trial because they did something wrong." *Ibid.* The judge then told Gilbert that his response was "contrary to our whole system of justice. When people are accused of a crime, there's no presumption . . . of guil[t]. The presumption is the other way." *Ibid.* Gilbert replied, "I understand that in theory." *Ibid.*

At the completion of this colloquy, Martinez-Salazar and his codefendant challenged Gilbert for cause. The Government opposed the challenge. The District Court declined to excuse Gilbert for cause, stating: "You know about him and know his opinions. He said . . . he could follow the instructions, and he said . . . 'I don't think I know what I would do,' et cetera. So I think you have reasons to challenge him[,] . . . strike him if you choose to do that." *Ibid.*

After twice objecting, unsuccessfully, to the for-cause ruling, Martinez-Salazar used a peremptory challenge to remove Gilbert. Martinez-Salazar and his codefendant subsequently exhausted all of their peremptory challenges. The codefendants did not request an additional peremptory challenge for selection of the petit jury (a request Rule 24(b) expressly permits a district court to grant when there are multiple defendants). See Tr. of Oral Arg. 34–35. At the close of jury selection, the District Court read out the names of the jurors to be seated and asked if the prosecutor or defense counsel had any objections to any of those jurors. Martinez-Salazar's counsel responded: "None from us." App. 182. At the conclusion of the trial, Martinez-Salazar was convicted on all counts.

On appeal, Martinez-Salazar contended that the District Court abused its discretion in refusing to strike Gilbert for cause and that this error forced Martinez-Salazar to use a peremptory challenge on Gilbert. The Ninth Circuit agreed (and the Government here does not contest) that the District Court's refusal to strike Gilbert for cause was an abuse of discretion. 146 F. 3d, at 656. This error, the Court of Appeals held, did not violate the Sixth Amendment, because Gilbert was removed and the impartiality of the jury eventually seated was not challenged. *Id.*, at 657. But the Court of Appeals further concluded that the District Court's mistake resulted in a violation of Martinez-Salazar's Fifth Amendment due process rights. According to the Ninth Circuit, the District Court's error in denying the for-cause

challenge forced Martinez-Salazar to use a peremptory challenge curatively, thereby impairing his right to the full complement of peremptory challenges to which federal law entitled him. Such an error, the Court of Appeals held, requires automatic reversal. *Id.*, at 659.

Judge Rymer dissented in part. She observed that nothing in the text of Rule 24(b) suggests that the exercise of peremptory challenges is impaired if the defendant uses a challenge to remove a juror who should have been excused for cause. *Id.*, at 659–660. Martinez-Salazar, she emphasized, never asserted in the District Court that he wished to strike some other juror with the peremptory challenge he used to remove Gilbert, nor did he question the impartiality of the jury as finally composed. *Id.*, at 660. Assuming, *arguendo*, that there was a violation of Rule 24(b), Judge Rymer "would not engraft [onto the Due Process Clause] a common law remedy of per se reversal for a Rule violation." *Id.*, at 661. The court's decision *"[c]onstitutionalizing* the impairment of peremptory challenges," she underscored, ran counter to this Court's decision in *Ross* and was hardly "inconsequential" in view of the reality that "[t]rial courts, state and federal, rule on cause challenges by the minute." *Id.*, at 659, 661.

The Courts of Appeals have divided on the question whether a defendant's peremptory challenge right is impaired when he peremptorily challenges a potential juror whom the district court erroneously refused to excuse for cause, and the defendant thereafter exhausts his peremptory challenges. The First and Fifth Circuits have indicated agreement with the Ninth Circuit that this circumstance constitutes an abridgment of the right to exercise peremptory challenges. See *United States* v. *Cambara*, 902 F. 2d 144, 147–148 (CA1 1990); *United States* v. *Hall*, 152 F. 3d 381, 408 (CA5 1998). The Tenth and Eleventh Circuits, on the other hand, have found in this situation no impairment of the right to peremptory challenges. See *United States* v. *Brooks*, 161

F. 3d 1240, 1245–1246 (CA10 1998); *United States* v. *Farmer*, 923 F. 2d 1557, 1566 (CA11 1991).[1] We granted certiorari, 527 U. S. 1021 (1999), and now reverse the Ninth Circuit's judgment.

## II

The peremptory challenge is part of our common-law heritage. Its use in felony trials was already venerable in Blackstone's time. See 4 W. Blackstone, Commentaries 346–348 (1769). We have long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury. See, *e. g., Swain* v. *Alabama*, 380 U. S. 202, 212–213, 218–219 (1965); *Pointer* v. *United States*, 151 U. S. 396, 408 (1894). But we have long recognized, as well, that such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension. *Ross*, 487 U. S., at 88; see *Stilson* v. *United States*, 250 U. S. 583, 586 (1919) ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.").

Legislative provision for peremptory challenges in federal criminal trials dates from 1790. See Act of Apr. 30, 1790, ch. 9, § 30, 1 Stat. 119. Since 1946, Rule 24 of the Federal Rules of Criminal Procedure has provided the governing instructions. That Rule, reproduced in its entirety below,[2]

---

[1] There is a corresponding conflict among the Circuits in civil cases. Compare *Kirk* v. *Raymark Industries, Inc.*, 61 F. 3d 147, 157 (CA3 1995) (right to peremptory challenge is impaired when a party exercises such a challenge to strike a prospective juror who should have been removed for cause), with *Getter* v. *Wal-Mart Stores, Inc.*, 66 F. 3d 1119, 1122–1123 (CA10 1995) (no impairment).

[2] Rule 24. Trial Jurors.

"(a) EXAMINATION. The court may permit the defendant or the defendant's attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or the defendant's attorney and the attorney for the government to supplement the examina-

prescribes that for offenses "punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges." Fed. Rule Crim. Proc. 24(b). In a multiple-defendant case, the district court "may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly." *Ibid.* The Rule also provides for further peremptory challenges when alternate jurors are to be impanelled; when, as in Martinez-Salazar's case, an alternate is to be selected, each side is entitled to one peremptory challenge in selecting that juror.

---

tion by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper.

"(b) PEREMPTORY CHALLENGES. If the offense charged is punishable by death, each side is entitled to 20 peremptory challenges. If the offense charged is punishable by imprisonment for more than one year, the government is entitled to 6 peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges. If the offense charged is punishable by imprisonment for not more than one year or by fine or both, each side is entitled to 3 peremptory challenges. If there is more than one defendant, the court may allow the defendants additional peremptory challenges and permit them to be exercised separately or jointly.

"(c) ALTERNATE JURORS. The court may direct that not more than 6 jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. Each side is entitled to 1 peremptory challenge in addition to those otherwise allowed by law if 1 or 2 alternate jurors are to be impanelled, 2 peremptory challenges if 3 or 4 alternate jurors are to be impanelled, and 3 peremptory challenges if 5 or 6 alternate jurors are to be impanelled. The additional peremptory challenges may be used against an alternate jury only, and the other peremptory challenges allowed by these rules may not be used against an alternate juror."

Fed. Rule Crim. Proc. 24(c). The question to which we now turn is whether Martinez-Salazar was denied any right for which Rule 24 provides.

### III

Our most recent decision in point is *Ross* v. *Oklahoma*. That 1988 decision dealt with a question resembling the one presented here, although the issue in *Ross* arose in a state-law setting. The defendant in *Ross* exercised a peremptory challenge to cure the trial court's error in denying a challenge for cause. We first rejected, as the Ninth Circuit rightly did in the decision under review, the position that, without more, "the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury." 487 U. S., at 88. "So long as the jury that sits is impartial," we held, "the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated." *Ibid.* We then took up the defendant's due process objection. He argued that forced use of a peremptory challenge to cure a trial court's error in denying a challenge for cause "arbitrarily depriv[ed] him of the full complement of . . . peremptory challenges allowed under Oklahoma law." *Id.*, at 89. An Oklahoma statute accorded the defendant nine peremptory challenges. Oklahoma courts had read into that grant a requirement that "a defendant who disagrees with the trial court's ruling on a for-cause challenge must, in order to preserve the claim that the ruling deprived him of a fair trial, exercise a peremptory challenge to remove the juror." *Ibid.* Even then, under Oklahoma law, "the error [was] grounds for reversal only if the defendant exhaust[ed] all peremptory challenges and an incompetent juror [was] forced upon him." *Ibid.* The defendant in *Ross*, we therefore concluded, did not lose any right conferred by state law when he used one of his nine challenges to remove a juror who should have been excused for cause. Because the defendant received all that state law allowed him, and the fair trial that the Federal Constitution

guaranteed, we rejected his due process challenge. *Id.*, at 90–91.

Underlying the Court of Appeals holding in this case was the notion that the District Court's error in denying the challenge for cause "forced" Martinez-Salazar to use a peremptory challenge to remove the objectionable venire member. 146 F. 3d, at 659. Starting from this premise, the Court of Appeals reasoned that Rule 24(b) was violated because Martinez-Salazar could effectively exercise only nine of the ten initial peremptory challenges for which the Rule provided. The Court of Appeals further concluded that "due process is violated when a defendant is forced to exercise a peremptory challenge to cure an erroneous for-cause refusal." *Id.*, at 658.

The Government urges us to reverse the Court of Appeals judgment on the ground that federal law, like the Oklahoma statute considered in *Ross*, should be read to require a defendant to use a peremptory challenge to strike a juror who should have been removed for cause, in order to preserve the claim that the for-cause ruling impaired the defendant's right to a fair trial. Brief for United States 19–22. In support of its position, the Government points to various limitations on the exercise of peremptory challenges that this Court has sanctioned—limitations that could be viewed as effectively reducing the number of challenges available to a defendant. See Reply Brief 3 (citing *Stilson*, 250 U. S., at 586 (sharing of peremptories among codefendants); *St. Clair* v. *United States*, 154 U. S. 134, 147–148 (1894) (requirement that parties exercise or waive peremptory strike as each potential juror is selected at random and qualified); *Pointer*, 151 U. S., at 409, 412 (simultaneous defense and prosecution strikes)). The cases on which the Government relies address procedures under which peremptory challenges are exercised. None of them demands that a defendant use or refrain from using a peremptory challenge on a particular basis or when a particular set of facts is present. To date

this Court has recognized only one substantive control over a federal criminal defendant's choice of whom to challenge peremptorily. Under the Equal Protection Clause, a defendant may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race. See, e. g., *J. E. B.* v. *Alabama ex rel. T. B.*, 511 U. S. 127 (1994) (gender); *Hernandez* v. *New York*, 500 U. S. 352 (1991) (ethnic origin); *Batson* v. *Kentucky*, 476 U. S. 79 (1986) (race). We decline to read into Rule 24, or otherwise impose, the further control advanced by the Government.

We agree, however, with the Government's narrower contention that Rule 24(b) was not violated in this case. Reply Brief 2–3. The Court of Appeals erred in concluding that the District Court's for-cause mistake compelled Martinez-Salazar to challenge Gilbert peremptorily, thereby reducing his allotment of peremptory challenges by one. 146 F. 3d, at 659. A hard choice is not the same as no choice. Martinez-Salazar, together with his codefendant, received and exercised 11 peremptory challenges (10 for the petit jury, 1 in selecting an alternate juror). That is all he is entitled to under the Rule.

After objecting to the District Court's denial of his for-cause challenge, Martinez-Salazar had the option of letting Gilbert sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal. Instead, Martinez-Salazar elected to use a challenge to remove Gilbert because he did not want Gilbert to sit on his jury. This was Martinez-Salazar's choice.[3] The District Court did not demand—and Rule 24(b) did not require—that Martinez-Salazar use a peremptory challenge curatively.

In choosing to remove Gilbert rather than taking his chances on appeal, Martinez-Salazar did not lose a peremp-

---

[3] The choice would be less hard, of course, if, as JUSTICE SCALIA hypothesizes, the "defendant had plenty of peremptories left." See *post*, at 319 (opinion concurring in judgment).

tory challenge. Rather, he used the challenge in line with a principal reason for peremptories: to help secure the constitutional guarantee of trial by an impartial jury. See, *e. g.*, *J. E. B.*, 511 U. S., at 137, n. 8 (purpose of peremptory challenges " 'is to permit litigants to assist the government in the selection of an impartial trier of fact' ") (quoting *Edmonson* v. *Leesville Concrete Co.*, 500 U. S. 614, 620 (1991)); *Georgia* v. *McCollum*, 505 U. S. 42, 57 (1992) (peremptory challenges are "one state-created means to the constitutional end of an impartial jury and a fair trial"); *Frazier* v. *United States*, 335 U. S. 497, 505 (1948) ("the right [to peremptory challenges] is given in aid of the party's interest to secure a fair and impartial jury"). Moreover, the immediate choice Martinez-Salazar confronted—to stand on his objection to the erroneous denial of the challenge for cause or to use a peremptory challenge to effect an instantaneous cure of the error—comports with the reality of the jury selection process. Challenges for cause and rulings upon them, as Judge Rymer observed, see *supra*, at 310, are fast paced, made on the spot and under pressure. Counsel as well as court, in that setting, must be prepared to decide, often between shades of gray, "by the minute." 146 F. 3d, at 661.

In conclusion, we note what this case does not involve. It is not asserted that the trial court deliberately misapplied the law in order to force the defendants to use a peremptory challenge to correct the court's error. See *Ross*, 487 U. S., at 91, n. 5. Accordingly, no question is presented here whether such an error would warrant reversal. Nor did the District Court's ruling result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal. See *id.*, at 85 ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned."); see also *Parker* v. *Gladden*, 385 U. S. 363, 366

(1966) *(per curiam)* (a defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors").[4]

\* \* \*

We answer today the question left open in *Ross* and hold that a defendant's exercise of peremptory challenges pursuant to Rule 24(b) is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. Martinez-Salazar and his codefendant were accorded 11 peremptory challenges, the exact number Rule 24(b) and (c) allowed in this case. Martinez-Salazar received precisely what federal law provided; he cannot tenably assert any violation of his Fifth Amendment right to due process. See *Ross*, 487 U. S., at 91. For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is

*Reversed.*

JUSTICE SOUTER, concurring.

I concur in the opinion of the Court. I write only to suggest that this case does not present the issue whether it is reversible error to refuse to afford a defendant a peremptory challenge beyond the maximum otherwise allowed, when he has used a peremptory challenge to cure an erroneous denial of a challenge for cause and when he shows that he would

---

[4] Relying on language in *Swain* v. *Alabama*, 380 U. S. 202 (1965), as did the Court of Appeals in the decision below, Martinez-Salazar urges the Court to adopt a remedy of automatic reversal whenever a defendant's right to a certain number of peremptory challenges is substantially impaired. Brief for Respondent 29 (a "'denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice'") (quoting *Swain*, 380 U. S., at 219). Because we find no impairment, we do not decide in this case what the appropriate remedy for a substantial impairment would be. We note, however, that the oft-quoted language in *Swain* was not only unnecessary to the decision in that case—because *Swain* did not address any claim that a defendant had been denied a peremptory challenge—but was founded on a series of our early cases decided long before the adoption of harmless-error review.

otherwise use his full complement of peremptory challenges for the noncurative purposes that are the focus of the peremptory right. Martinez-Salazar did not show that, if he had not used his peremptory challenge curatively, he would have used it peremptorily against another juror. He did not ask for a makeup peremptory or object to any juror who sat. Martinez-Salazar simply made a choice to use his peremptory challenge curatively.

JUSTICE SCALIA, with whom JUSTICE KENNEDY joins, concurring in the judgment.

I agree with the Court's analysis of the issue before us: Respondent has been accorded the full number of peremptory challenges to which he was entitled. The fact that he voluntarily chose to expend one of them upon a venireman who should have been stricken for cause makes no difference.

I do not join the opinion of the Court because it unnecessarily pronounces upon the question whether, had respondent *not* expended his peremptory challenge, he would have been able to complain about the seating of the biased juror. See *ante,* at 315 ("Martinez-Salazar had the option of letting Gilbert sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal"). Since he *did* expend the challenge, that issue is simply not before us.

I am far from certain, moreover, that the Court's suggested resolution of the issue is correct. It is easy enough to agree that we have no warrant "to read into Rule 24," *ibid.,* a requirement that peremptories be used to remove veniremen properly challenged for cause. The difficult question, however, is not whether Federal Rule of Criminal Procedure 24(b) requires exercise of the peremptory, but whether normal principles of waiver (not to say the even more fundamental principle of *volenti non fit injuria*) disable a defendant from objecting on appeal to the seating of a juror he was entirely able to prevent. I would not find it easy to overturn a conviction where, to take an extreme ex-

ample, a defendant had plenty of peremptories left but chose instead to allow to be placed upon the jury a person to whom he had registered an objection for cause, and whose presence he believed would nullify any conviction.

The resolution of juror-bias questions is never clear cut, and it may well be regarded as one of the very purposes of peremptory challenges to enable the defendant to correct judicial error on the point. Indeed, that *must* have been one of their purposes in earlier years, when there was *no appeal* from a criminal conviction, see *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, 335–336 (1904)—so that if the defendant did not correct the error by using one of his peremptories, the error would not be corrected at all. It is certainly not clear to me that the institution of appeals exempted defendants from using peremptories for this original purpose, thereby giving them (in effect) additional challenges.

Because the question is not presented (and hence cannot be authoritatively resolved), I would leave it unaddressed.