# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

No. 00-4063

LARRY BLANDING,
  *Defendant-Appellant.*

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

No. 00-4086

LARRY BLANDING,
  *Defendant-Appellant.*

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Charles H. Haden II, Chief District Judge, sitting by designation.
(CR-90-434-CHH)

Argued: February 28, 2001

Decided: May 18, 2001

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Luttig wrote the
opinion, in which Judge Widener and Judge Niemeyer joined.

---

**COUNSEL**

**ARGUED:** James Edward Bell, III, LAW FIRM OF J. EDWARD BELL, III, L.L.C., Sumter, South Carolina, for Appellant. Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** James K. Robinson, Assistant Attorney General, Richard C. Pilger, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

**OPINION**

LUTTIG, Circuit Judge:

Larry Blanding, a black, former state legislator in South Carolina, was convicted by a jury of two counts of extortion under the Hobbs Act. During jury selection, his counsel peremptorily struck a juror who had responded in a jury questionnaire that he had three bumper stickers on his car that "concern[ed] southern heritage and/or the Confederate flag." The district court sustained the government's reverse challenge to defense counsel's peremptory strike under *Batson* v. *Kentucky*, 476 U.S. 79 (1986), concluding that counsel's strike was motivated by purposeful racial discrimination. For the reasons that follow, we vacate the judgment of the district court and remand for a new trial.

I.

Blanding's convictions under the Hobbs Act, 18 U.S.C. § 1951, arose out of the FBI's "Lost Trust" investigation into corruption in the South Carolina legislature, during which the FBI used undercover operatives to induce several legislators — including numerous black legislators such as Blanding — to accept bribes or illicit campaign contributions in exchange for their support of a bill that would have legalized pari-mutuel betting on horse and dog racing in South Carolina.

Prior to Blanding's trial, each juror was required to complete a "Juror Questionnaire." Juror 47, a white male, provided the following

response to a question about whether he had displayed any bumper stickers on his car:

> 22.   Have you displayed any bumper stickers on your auto-mobile in the last twelve months?
>
> __x__ Yes _____ No
>
> If yes, please list each bumper sticker.
> *Three concerning southern heritage and/or the Confederate flag, however I* did not place them on the automobile.

J.A. 1503 (emphasis in original).

During jury selection, defense counsel peremptorily struck Juror 47.[1] The government objected to counsel's strike, as in violation of *Batson* v. *Kentucky*. And in response to the government's objection, defense counsel explained his reason for striking Juror 47 as follows:

> Mr. Bell: Defendant's number 1, Your Honor, is number 47. On his questionnaire he says that he has the confederate flag on his bumper sticker. In this state, as you may have heard, there is a big to do with the confederate flag. We are getting boycotted by the NAACP and it's a big deal and that is why we struck him.
>
> Mr. Pilger: The questionnaire also said he didn't put them on there.
>
> The Court: That he?
>
> Mr. Pilger: He did not put the stickers on there. He disclaimed anything having to do with the sentiment.

---

[1]Defense counsel used each of his peremptory challenges to strike white jurors. Each of these strikes was sustained by the district court as race neutral, except for the strike of Juror 47 at issue before us.

Mr. Bell: The fact is, he has them on his bumpers and we were concerned about it.

J.A. 479-80. The court overruled defense counsel's peremptory strike and seated Juror 47, holding that he was not stricken for a race-neutral reason as required by *Batson*. J.A. 485. In a subsequent order disposing of various post-trial motions, the district court held that the proffered reason for striking Juror 47 was in fact race neutral, but that that reason was a pretext for purposeful racial discrimination. J.A. 1504.

## II.

The Supreme Court has long recognized that the peremptory challenge is a part of our common-law heritage and plays a significant role "in reinforcing a defendant's right to trial by an impartial jury." *United States* v. *Martinez-Salazar*, 528 U.S. 304, 311 (2000) (citing *Swain* v. *Alabama*, 380 U.S. 202, 212-13, 218-19 (1965), and *Pointer* v. *United States*, 151 U.S. 396, 408 (1894)). As the Supreme Court observed in *Batson*, ordinarily a peremptory challenge may be exercised by an attorney "for any reason at all, as long as that reason is related to his view concerning the outcome of the case to be tried." *Batson*, 476 U.S. at 89; *Davis* v. *Baltimore Gas & Electric*, 160 F.3d 1023, 1026 (4th Cir. 1998) (quoting *Batson*). The Court has carved out a narrow exception to that general principle, however, for those cases where the party opposing a peremptory strike can prove that a strike was motivated by "*[p]urposeful* racial discrimination" in violation of the Equal Protection Clause. *Batson*, 476 U.S. at 86 (emphasis added); *see also Brown* v. *Dixon*, 891 F.2d 490, 496 (4th Cir. 1989) (same).[2]

"A finding by the district court concerning whether a peremptory challenge was exercised for a racially discriminatory reason" is given "great deference" and is thus reviewed only for "clear error." *Jones*

---

[2]The Supreme Court held in cases following *Batson* that "a defendant may [also] not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's" gender or ethnic origin. *Martinez-Salazar*, 528 U.S. at 315 (citing *J.E.B.* v. *Alabama ex rel. T.B.*, 511 U.S. 127 (1994) (gender), and *Hernandez* v. *New York*, 500 U.S. 352 (1991) (ethnic origin)).

v. *Plaster*, 57 F.3d 417, 421 (4th Cir. 1995). Notwithstanding this deferential standard of review, we are left in this case with the definite and firm conviction that an error was committed by the district court when it sustained the government's challenge to defense counsel's peremptory strike.

When defense counsel proffered his explanation for striking Juror 47 during jury selection, he emphasized that he did not strike the juror because he was white, but, rather, because the juror had displayed a symbol on the bumper of his automobile that evidenced possible racial bias. J.A. 1349. As he succinctly explained in his post-trial motion, he "struck 'the juror' because of the significant risk that this juror held interests adverse to Mr. Blanding and may possibly have been biased against African-Americans." J.A. 1349.[3]

It is the sincerely held view of many Americans, of all races, that the confederate flag is a symbol of racial separation and oppression. And, unfortunately, as uncomfortable as it is to admit, there are still those today who affirm allegiance to the confederate flag precisely because, for them, that flag is identified with racial separation. Because there are citizens who not only continue to hold separatist views, but who revere the confederate flag precisely for its symbolism of those views, it is not an irrational inference that one who displays the confederate flag *may* harbor racial bias against African-Americans.

Although Blanding's counsel need not have drawn such an inference about Juror 47, this is the inference that he did draw and, whether or not warranted as to Juror 47 in particular, it was an inference that he was entitled to draw. It is a permissible, persuasive, race-neutral inference in the context of a peremptory challenge under the Equal Protection Clause. It is all the more so, given that not only was his client an African-American, but his client was known to have pub-

---

[3]The parties do not dispute that defense counsel's challenge of juror 47 on the basis of *potential racial bias* was "related to his view concerning the outcome of the case to be tried" since there is no question that race played a role in this case. For example, Blanding argued that he was a victim of racial targeting by government agents and prosecutors. J.A. 1362-75.

licly and vehemently opposed the flying of the confederate flag over the South Carolina State House during his term as a legislator because of his belief that such represented official acquiescence in, if not imprimatur of, a view that black Americans are not, and ought not be regarded as, equal with all other citizens.

Of course, defense counsel's strike could yet have been impermissible if his race-neutral explanation was in fact mere pretext for purposeful racial discrimination. However, there is nothing in the record to support a conclusion that counsel's concern for racial bias borne of Juror 47's prominent display of the confederate flag was pretext for racial discrimination against the juror because he was white. Without explanation, the district court concluded that the pretext was evident from counsel's demeanor. However, we are most reluctant to accept such a finding when, contemporaneous with its observance of counsel's demeanor, the district court concluded that counsel had proffered an impermissibly racial explanation for the strike. It is possible that, at the very same time that the court believed that counsel's explanation for the strike was racially based, it also believed that counsel's demeanor was pretextual of racial discrimination. This possibility is sufficiently unlikely, however, that we are unprepared to sustain the district court's decision to seat Juror 47 on this unexplained basis alone.

Accordingly, the judgment of conviction and sentence is vacated, and the case is remanded for new trial.

*It is so ordered*