KUHN, J.
 

 | ¡¿Defendant, Mark S. Lewis, was charged by grand jury indictment with one count of second-degree murder, a violation of La. R.S. 14:30.1, and pled not guilty. Following a jury trial, he was found guilty as charged by unanimous verdict. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He now appeals, designating the following three assignments of error:
 

 1. The trial court erred in limiting the scope of the defendant’s
 
 voir dire
 
 examination.
 

 2. The trial court erred in denying the defendant’s challenges for cause of
 
 *784
 
 juror Tonya [Steele] on panel one and juror Jerry Landry on pan el two.
 

 8. The trial court erred in allowing the State to introduce evidence that the defendant logged on to a pornographic website on the day the victim disappeared.
 

 We affirm the conviction and sentence.
 

 FACTS
 

 The thirteen-year-old victim, KA.,
 
 [1]
 
 was the niece of defendant’s wife. The victim lived with her mother, D.A., in a house approximately fifty to sixty yards in front of defendant’s house in French Settlement, Louisiana. The victim routinely arrived home from school at 3:00 p.m. and promptly called her mother, who did not arrive home from work until approximately 4:45 p.m.
 

 In 2005, defendant commented to Larry Brown, a coworker, that defendant had looked up the victim’s shorts when she had visited his house and wanted “to get that, to hit that[,]” which Brown understood to be a reference to having sex with the victim.
 

 | :.On February 1, 2007, between 2:55 p.m. and 3:00 p.m., the victim’s school bus driver dropped her off at her home. At 3:00 p.m., the victim called D.A., and they made plans to go out for chocolate after D.A. got home from work. At 4:31 p.m., D.A. became worried about the victim after she did not answer her cell phone, which she always kept with her. There was no evidence of forced entry at the victim’s home, and nothing, other than the victim, was missing from the home. Telephone records indicated that the last call the victim answered came from defendant’s residence at 3:06 p.m.
 

 At approximately 5:15 p.m., defendant’s friend, Craig Simoneaux, saw defendant sitting in his truck outside of Simoneaux’s house. Simoneaux was playing a video game and expected defendant to come knock on the door. When defendant did not come to the door, Simoneaux looked out again and saw defendant using his cell phone. Simoneaux returned to his game, but after defendant failed to come to his door, went outside to speak to him. Defendant was reaching into the back seat area of his truck. As soon as he saw Simoneaux, defendant quickly closed the truck door and turned around. Defendant looked like he was “about to break down.” Simoneaux asked defendant what was wrong, and he claimed nothing was wrong; he had just been talking to his wife. Defendant told Simoneaux that he would come back later and tell Simoneaux what had happened. Defendant almost backed into a ditch before he quickly drove away. He subsequently telephoned Simoneaux and claimed he had been in a fight at work. He also stated that he was riding around or riding to St. Amant. Approximately thirty-five to forty minutes later, he called Simoneaux again and [ 4told him if the police came to him, he should tell them that defendant had been there at 4:30 p.m. Simoneaux reported defendant’s actions to the police.
 

 Numerous family members and friends arrived at the victim’s residence to help look for her. Thereafter, defendant arrived in his truck. His wife noticed he had blood, a scratch, and a cut on his face. The scratch was a “scratch like fingernails.” She asked if he had been in a fight, but defendant did not respond and walked away. He did not help search for the victim.
 

 Following Simoneaux’s telephone call, the police questioned defendant in his house. Defendant told the police that, on
 
 *785
 
 February 1, 2007, he visited his mother in the hospital and then went to Simoneaux’s house, where he stayed from 4:00 p.m. until 6:00 p.m. While the police were questioning defendant, they noticed the washer and dryer were running. Defendant subsequently removed a comforter from the dryer. His wife indicated that she normally did the laundry.
 

 Defendant denied that the victim had ever been in his truck. He claimed that he received the scratches on his arms and face at work when a trailer he was attaching “popped up.” He did not report to work on February 1, 2007, and no injuries or altercations were reported at his work place on January 31, 2007 or shortly before that date. Defendant’s wife indicated that he had no scratches or injuries to his face and hands on the morning of February 1, 2007. Defendant’s stepson indicated defendant had no injuries on January 31, 2007, and there was no discussion in the house of defendant having fought at work.
 

 A scent-tracking dog was provided with the victim’s scent. Thereafter, the dog alerted to the washer and dryer in defendant’s house, to his work jacket, to the comforter he had washed, and to the back seat of his truck. Hair with a DNA lr>profile consistent with the victim’s DNA profile was also recovered from the back seat of defendant’s truck. Further, two bloodstains with a DNA profile consistent with the victim’s DNA profile were on the side of the back seat, and the victim’s ruler, marked with her initials, was also in the rear portion of the cab. D.A. had purchased the ruler for the victim only a week or two before she went missing. Although the victim had previously ridden in defendant’s truck with his children, she always sat next to defendant in the front of the truck. The victim had last ridden alive in the truck in January of 2007.
 

 On February 3, 2007, the victim’s body was discovered submerged in a canal off New River Road in St. Amant, 13.7 miles from defendant’s home. She had been strangled to death. She was fully clothed, but her shorts were unzipped.
 

 INDIVIDUAL VOIR DIRE
 

 In assignment of error number one, defendant contends the trial court erred in limiting the scope of the
 
 voir dire
 
 by denying his motion to individually question the prospective jurors who had prior knowledge of the case through news media and to individually question prospective juror Tonya Steele because she admitted she looked through defendant’s criminal file.
 

 The trial court has discretion over the manner in which veniremen are called and the scope of
 
 voir dire
 
 examination.
 
 State v. Allen,
 
 95-1754, p. 10 (La.9/5/96), 682 So.2d 713, 722. The Louisiana Supreme Court has held that the trial court does not err in refusing requests for individual
 
 voir dire
 
 without a showing of special circumstances.
 
 Id.
 
 The defendant is required to show that there is a significant possibility that group
 
 voir dire
 
 will expose potential jurors to prejudicial material.
 
 Id.
 

 ┴6During
 
 voir dire
 
 of the first pan el of fourteen prospective jurors, the court asked if there was any personal, business, family or health reason why any of the jurors could not serve and be fair and impartial. Only prospective juror Casanova responded affirmatively. After she indicated she could not be fair and impartial due to her familiarity with the victim’s family and her conversations with the family, the trial court dismissed her.
 

 Nine prospective jurors indicated that they had heard or read something about the case. Prospective juror May indicated that the source of his information was the local print and news media and a friend
 
 *786
 
 who owned land near the victim’s residence. May said he could put aside whatever he had heard and decide the case based on what he heard in the courtroom. He expressly stated that if what he heard from the witnesses at trial differed from what he had previously read or heard outside the courtroom, he would base his decision on what he heard in the courtroom.
 

 Prospective juror Allen stated that the source of her information was the newspaper and the television. She indicated she would do her absolute best to put aside whatever else she had heard and decide the case on the basis of the sworn testimony in the courtroom.
 

 Prospective juror Case noted that the source of her information was the television. She said that she could put aside whatever else she had heard and decide the case on the basis of the sworn testimony in the courtroom.
 

 Prospective juror Steele, a minute clerk for the Livingston Parish Clerk of Court’s Office, explained that the source of her information was the newspaper, the television, and defendant’s file. She indicated that she had “glanc[ed] 17through” defendant’s file “a few months back[.]” She stated that she could put whatever else she had heard aside and decide the case on the basis of the sworn testimony in the courtroom, noting that if what she heard from the witnesses at trial differed from what she had previously read or heard outside the courtroom, she would conclude that her previous information was wrong and base her decision on what she heard in the courtroom.
 

 Prospective juror Hidalgo said that the source of his information was talk radio programs. Hidalgo stated that he absolutely could put aside whatever he had heard and decide the case based on what he heard in the courtroom.
 

 Prospective juror Buchanan explained that the source of her information was the television. She indicated she could put aside whatever else she had heard and decide the case on the basis of the sworn testimony in the courtroom. If she heard something different in the courtroom than she had heard on television, Buchanan said that she would base her decision on what she heard in the courtroom.
 

 Prospective juror Hebert indicated that the source of his information was the newspaper and the television. He explained that he could put aside whatever else he had heard and decide the case on the basis of the sworn testimony in the courtroom. He said that if he heard something different in the courtroom from what he had heard on television, he would conclude that the earlier information was wrong and would base his decision on what he heard in the courtroom.
 

 Prospective juror Harris said that the source of her information was the television and the newspaper. She indicated she could put aside whatever else she | shad heard and decide the case on the basis of the sworn testimony in the courtroom.
 

 At the beginning of the defense’s opportunity to question the prospective jurors, defense counsel stated that the State had done most of the work and he would not “cover the same ground that [the State did]” because he had looked at the prospective jurors while they were answering the State’s questions and had heard the answers given. After questioning the prospective jurors about matters other than what they knew about the case, defense counsel approached the bench, alleged that defendant’s prior conviction had been reported in the media, and requested that he be permitted to question the jurors who had indicated they had heard about the case about what they knew about defendant’s prior criminal history. The State
 
 *787
 
 objected to the jurors being individually questioned because all of them, with the exception of Casanova, had committed to put aside whatever else they had heard. The trial court agreed with the State, noting that the proposed questioning would “taint everybody completely.” The defense asked that its objection be noted for the record.
 

 Initially, we note defendant failed to assert his request in the trial court for individual
 
 voir dire
 
 of prospective juror Tonya Steele because she had looked through his criminal file. An irregularity or error cannot be availed of after verdict unless, at the time the ruling or order of the court was made or sought, the party made known to the court the action that he desired the court to take, or of his objections to the action of the court, and the grounds therefor. La.C.Cr.P. art. 841.
 

 | ^Further, there was no abuse of discretion in the denial of the individual
 
 voir dire
 
 requested by defendant. As noted by the State and the trial court, all the jurors at issue, with the exception of Casanova who was promptly discharged for cause, indicated they could put aside whatever else they had heard and decide the case on the basis of the sworn testimony in the courtroom.
 
 See Allen,
 
 95-1754 at pp. 10-11, 682 So.2d at 722 (“The defendant was not prejudiced by the trial court’s refusal to order individual
 
 voir dire,
 
 nor did defendant show any special circumstances warranting individual
 
 voir dire.
 
 While some of the potential jurors stated they had seen articles about the crime, none of them stated any specific details concerning the crime or the defendant, nor did any of them firmly state an opinion based on the articles.”);
 
 see also State v. Manning,
 
 2003-1982, p. 13 n. 13 (La.10/19/04), 885 So.2d 1044, 1065-66 n. 13,
 
 cert. denied,
 
 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005) (“Notably, while a number of prospective jurors indicated they had some knowledge of the crime, very few stated they had formed an opinion about defendant’s guilt or innocence. Furthermore, the trial court did not limit the examination of the prospective jurors concerning their knowledge of the present crime”).
 

 This assignment of error is without merit.
 

 CHALLENGES FOR CAUSE
 

 Defendant urges the trial court erred in denying the defense challenge for cause against prospective juror Steele since “it [was] very likely” she had prior knowledge of his rap sheet because “in most cases” it is included in his file. He also claims the trial court erred in denying the defense challenge for cause against | inprospective juror Landry because he clearly stated that he would be more likely to believe a police officer over a random person.
 

 The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality, or on the ground that the juror will not accept the law as given to him by the court. La.C.Cr.P. art. 797(2) & 797(4).
 

 In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. Prejudice is presumed when a defendant’s challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.
 
 [2]
 
 An erroneous ruling depriv
 
 *788
 
 ing an accused of a peremptory challenge violates his substantial rights and constitutes reversible error.
 
 State v. Taylor,
 
 2003-1834, pp. 5-6 (La.5/25/04), 875 So.2d 58, 62. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may be inferred. However, the trial court is vested with broad discretion in ruling on a challenge for cause; its ruling will not be disturbed on appeal absent a showing of an abuse of discretion.
 
 State v. Henderson,
 
 99-1945, p. 9 (La.App. 1st Cir.6/23/00), 762 So.2d 747, 754,
 
 writ denied,
 
 2000-2223 (La.6/15/01), 793 So.2d 1235.
 

 | n Defendant challenged prospective juror Steele for cause. He contended Steele was not impartial because she had looked at the file, worked for the clerk’s office, knew the attorneys and the judge, and worked at the courthouse. The State pointed out that Steele had expressly stated she would put aside anything she had heard or read and make a decision based on the evidence she heard in the courtroom. The court denied the challenge for cause, and the defense used its third peremptory strike against Steele before exhausting all of its peremptory challenges.
 

 Initially, we note defendant failed to proffer the file which prospective juror Steele “glanc[ed] through^.]” Further, defendant fails to even allege the nature of his prior conviction or convictions or where it or they arose. Only matters contained in the record can be reviewed on appeal.
 
 State v. Vampran,
 
 491 So.2d 1356, 1364 (La.App. 1st Cir.),
 
 writ denied,
 
 496 So.2d 347 (La.1986).
 

 Moreover, the trial court did not abuse its broad discretion in denying the challenge for cause against Steele. She demonstrated a willingness and ability to decide the case impartially according to the law and the evidence and her responses as a whole did not reveal facts from which bias, prejudice, or inability to render judgment according to the law could reasonably be inferred.
 

 Jerry Mark Landry was a prospective juror on the second pan el called for jury selection. He was silent when the court asked the pan el if there was any reason whatsoever why any of them could not give both defendant and the State a fair trial and decide the case based solely on the evidence presented and in accordance with the law. He indicated he had heard about the crime on the radio and television and | 12read about it in the newspapers, but believed he could put that aside and make a decision based on what he heard in the courtroom. He also said that he had previously served as a juror in a criminal trial in Georgia. In that case, involving a charge of the defendant starving her baby to death, his verdict was not guilty.
 

 The defense asked the pan el, “[D]o any of you believe that law enforcement officers are somehow more credible witnesses than the general public, more likely to tell the truth than just the person picked at random?” Landry indicated he believed law enforcement officers were “more likely to be credible” than random people, and if a law enforcement officer told him something, he would be “more likely” to believe it to be true.
 

 The defense challenged Landry for cause, citing his statement that he believed law enforcement officers made more credible witnesses than average people. The
 
 *789
 
 State maintained that Landry had not been emphatic enough to be dismissed for cause. The trial court denied the challenge for cause. Thereafter, the defense used its eleventh peremptory strike against Landry before exhausting all of its peremptory challenges.
 

 There was no abuse of the trial court’s broad discretion in denying the challenge for cause against Landry. As noted by the trial court, the question posed to Landry was not precise enough, in and of itself, to establish the basis for a challenge for cause. Landry’s answers reflected no more than a permissible respect for police officers and their training. The defense did not ask Landry if he would believe a police officer if his testimony was contradicted by other evidence.
 
 See State v. Lindsey,
 
 2006-255, pp. 9-12 (La. 1/17/07), 948 So.2d 105,111-13.
 

 This assignment of error is without merit.
 

 J[^EVIDENCE THAT DEFENDANT’S COMPUTER WAS USED TO VISIT ADULT PORNOGRAPHIC WEBSITES SHORTLY BEFORE THE VICTIM’S DISAPPEARANCE
 

 Defendant claims that the fact his computer was used to log on to a pornographic website when the victim was at school was irrelevant and should have been excluded from the jury’s knowledge. In the alternative, he asserts that the evidence was more prejudicial than probative and that the trial court erred in admitting it.
 

 Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, ■ or waste of time. La. C.E. art. 403.
 

 It is well settled that courts may not admit evidence of other wrongs or acts to show the defendant as a man of bad character who has acted in conformity with his bad character. La. C.E. art. 404(B)(1). Evidence of other wrongs or acts committed by the defendant is generally inadmissible because of the substantial risk of grave prejudice to the defendant. However, the State may introduce evidence of other wrongs or acts if it establishes an independent and relevant reason such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. La. C.E. art. 404(B)(1). Upon request by the accused, the State must provide the defendant with notice and a hearing h4before trial if it intends to offer such evidence. Even when the other wrongs or acts evidence is offered for a purpose allowed under Article 404(B)(1), the evidence is not admissible unléss it tends to prove a material fact at issue or to rebut a defendant’s defense. The State also bears the burden of proving that the defendant committed the other wrongs or acts.
 
 State v. Rose,
 
 2006-0402, p. 12 (La.2/22/07), 949 So.2d 1236,1243.
 

 Although a defendant’s prior wrongs and bad acts may be relevant and otherwise admissible under La. C.E. art. 404(B)(1), the court must still balance the probative value of the evidence against its prejudicial effects before the evidence can be admitted. La. C.E. art. 403. Any in-culpatory evidence is “prejudicial” to a de
 
 *790
 
 fendant, especially when it is “probative” to a high degree.
 
 State v. Germain,
 
 433 So.2d 110, 118 (La.1983). As used in the balancing test, “prejudicial” limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial.
 
 Id. See also Old Chief v. United States,
 
 519 U.S. 172, 180, 117 S.Ct. 644, 650, 136 L.Ed.2d 574 (1997) (“The term ‘unfair prejudice,’ as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged”).
 
 Rose,
 
 2006-0402 at p. 13, 949 So.2d at 1243-44.
 

 Prior to the presentation of testimony from Ascension Parish Sheriffs Office Detective Glenn LeBlanc, defendant objected that evidence that perhaps he was looking at pornographic sites should be excluded because the probative value of the evidence was outweighed by the unfair prejudice of the evidence. The trial court denied the motion, and the defense objected to the court’s ruling.
 

 The trial court accepted Detective Le-Blanc as an expert in computer 11Bforensics. Detective LeBlanc indicated that an examination of the hard drive of the computer from defendant’s home did not reveal any chat or e-mail between defendant and the victim. The computer was, however, used to access the victim’s “My Space” page on January 31, 2007, at 8:47 p.m. Additionally, on February 1, 2007, between approximately 8:00 a.m. and 1:51 p.m., the computer was used to access adult pornographic sites on the internet. Defendant’s name was entered onto one of the sites by the user.
 

 The State had an independent and relevant reason for presenting the Article 404(B)(1) evidence at issue. The State’s theory of the case was that on the day of the offense, defendant was at his house looking at pornography on his computer and called the victim and convinced her to come over. The State contended that defendant then “put the moves on [the victim],” and, when she resisted, killed her. Evidence presented at trial indicated that defendant had previously expressed a lustful disposition toward the victim and that she may have been disrobed prior to or after being killed. Defendant denied killing the victim and claimed he was visiting his mother or a friend at the time she was killed. The facts that the computer located in defendant’s home was being used to access pornography until approximately an hour before the victim arrived home from school, and that a telephone call was made from defendant’s home to the victim’s cell phone, were relevant to place defendant at the location where the victim was kidnapped and/or killed (opportunity), as well as to establish a motive for the killing. The prejudicial effect to defendant from the challenged evidence did not rise to the level of undue or unfair prejudice when balanced against the probative value of the evidence.
 

 | ifiThis assignment of error is without merit.
 

 DECREE
 

 For these reasons, we affirm the conviction of and sentence imposed against defendant, Mark S. Lewis.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . We reference the victim only by her initials. See La. R.S. 46:1844(W).
 

 [2]
 

 . The rule is now different at the federal level.
 
 See United States v. Martinez-Salazar,
 
 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (exhaustion of peremptoiy challenges does not trigger automatic presumption of
 
 *788
 
 prejudice arising from trial court's erroneous denial of a cause challenge).