# SUPREME COURT OF THE UNITED STATES

## KRISTOPHER LOVE *v.* TEXAS

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS OF TEXAS

No. 21–5050.　Decided April 18, 2022

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER and JUSTICE KAGAN join, dissenting from the denial of summary vacatur.

Racial bias is "odious in all aspects," but "especially pernicious in the administration of justice." *Buck* v. *Davis*, 580 U. S. ___, ___ (2017) (slip op., at 22) (internal quotation marks omitted). When racial bias infects a jury in a capital case, it deprives a defendant of his right to an impartial tribunal in a life-or-death context, and it "'poisons public confidence' in the judicial process." *Ibid.* The seating of a racially biased juror, therefore, can never be harmless. As with other forms of disqualifying bias, if even one racially biased juror is empaneled and the death penalty is imposed, "the State is disentitled to execute the sentence," *Morgan* v. *Illinois*, 504 U. S. 719, 729 (1992).

In this case, petitioner Kristopher Love, a Black man, claims that one of the jurors in his capital trial was racially biased because the juror asserted during jury selection that "[n]on-white" races were statistically more violent than the white race. 29 Record 145. The Texas Court of Criminal Appeals never considered Love's claim on the merits. Instead, relying on an inapposite state-law rule, the court concluded that any error was harmless because Love had been provided with two extra peremptory strikes earlier in the jury selection proceeding, which he had used before the juror at issue was questioned. That decision was plainly erroneous. An already-expended peremptory strike is no cure

for the seating of an allegedly biased juror.  The state court thus deprived Love of any meaningful review of his federal constitutional claim.  I would summarily vacate the judgment below and remand for proper consideration.

I

In 2018, a jury convicted Love of capital murder in the course of a robbery that occurred in 2015.  Prior to trial, prospective members of the jury filled out a questionnaire that included the following questions:

"68.  Do you sometimes personally harbor bias against members of certain races or ethnic groups?

"69.  Do you believe that some races and/or ethnic groups tend to be more violent than others?"  Jury Questionnaire, p. 12 (Juror 1136B).

To the first question, No. 68, the prospective juror at issue answered, "No."  *Ibid.*  But to the second question, No. 69, he answered, "Yes."  *Ibid.*  He explained that "[s]tatistics show more violent crimes are committed by certain races.  I believe in statistics."  *Ibid.*

During the *voir dire* proceeding that followed, both Love and the State questioned the prospective juror about his response to question No. 69.  He explained that he understood "[n]on-white" races to be the "more violent races."  29 Record 145.  He claimed that he had seen statistics to this effect in "[n]ews reports and criminology classes" he had taken.  *Id.,* at 144.  He stated that his answer to question No. 69 was based on these statistics, rather than his "personal feelings towards one race or another," *id.,* at 107, and he indicated that he did not "think because of somebody's race they're more likely to commit a crime than somebody of a different race," *id.,* at 145.  He told defense counsel that he would not feel differently about Love "because he's an African American."  *Id.,* at 146.

Following the examination, Love's counsel moved to exclude the prospective juror for cause based on "his stated beliefs that . . . non-whites commit more violent crimes than whites." *Id.,* at 153. Counsel argued that, under Texas law, the first issue the jury would have to decide at sentencing (referred to as Special Issue No. 1) was "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Tex. Code Crim. Proc. Ann., Art. 37.071, §2(b)(1) (Vernon 2021). Counsel explained that "leaving this man on the jury would be an invitation to leaving someone on there that might make a decision on Special Issue No. 1 that would ultimately lead to a sentence of death on his preconceived notions and beliefs that have to do with the race of the defendant." 29 Record 153–154.

The trial court denied defense counsel's challenge for cause without explanation. At that point, counsel had exhausted all of Love's allotted peremptory challenges and two extra challenges the trial court had previously granted. Love's counsel requested a third additional peremptory challenge in order to strike the prospective juror at issue. The trial court denied that request, again without explanation, and seated the juror on the jury.

At the conclusion of the trial, the jury convicted Love. At sentencing, the jury unanimously concluded that there was a sufficient probability that Love would commit future violent crimes and that there were not sufficient mitigating circumstances to warrant a sentence of life. Accordingly, the trial court sentenced Love to death.

On appeal, Love argued that he was "denied the constitutional right to an impartial jury" because the trial court seated a "racially biased juror." Brief for Appellant in No. AP–77,085 (Tex. Crim. App.), pp. 101–102. Rather than address this federal constitutional claim on the merits, the Court of Criminal Appeals of Texas held that, "even if we assume that the trial court erred in denying Appellant's

challenges [to the juror at issue and another prospective juror] for cause," Love could not show any harm under Texas law. 2021 WL 1396409, *24 (Apr. 14, 2021). The court reasoned that the trial judge had previously granted Love two extra peremptory challenges, which he had already used by the time the prospective juror at issue was called up. Nevertheless, in the state appellate court's view, each extra peremptory challenge operated to cure any harm from the erroneous denial of any challenge for cause. See *ibid.* (citing *Chambers* v. *State*, 866 S. W. 2d 9, 23 (Tex. Crim. App. 1993) (en banc)). The court concluded that Love could not make out any claim for relief stemming from the juror's alleged bias. See 2021 WL 1396409, *24.

Love now petitions this Court for a writ of certiorari.

## II

"[T]he Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury." *Ross* v. *Oklahoma*, 487 U. S. 81, 85 (1988). Biases capable of destroying a jury's impartiality can take many forms. See *Morgan*, 504 U. S., at 729 (juror who would automatically vote for the death penalty in every case); *Parker* v. *Gladden*, 385 U. S. 363, 365–366 (1966) (*per curiam*) (prejudicial comments by the bailiff); *Irvin* v. *Dowd*, 366 U. S. 717, 725–727 (1961) (public opinions and press coverage about the case); *Morford* v. *United States*, 339 U. S. 258, 259 (1950) (*per curiam*) (potential influence of an executive order requiring loyalty to United States). Whatever the nature of the bias, if a trial court seats a juror who harbors a disqualifying prejudice, the resulting judgment must be reversed. See *United States* v. *Martinez-Salazar*, 528 U. S. 304, 316 (2000); *Morgan*, 504 U. S., at 729; see also *Rose* v. *Clark*, 478 U. S. 570, 578 (1986) ("Harmless-error analysis thus presupposes a trial . . . before an impartial judge and jury").

This Court has recognized that claims of racial bias must

be treated "with added precaution" in light of the special danger such bias poses. *Pena-Rodriguez* v. *Colorado*, 580 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 17). For instance, when a juror makes a clear statement indicating that racial stereotypes or animus influenced a conviction, the Sixth Amendment requires the trial court to make an exception to the general rule shielding juror deliberations from scrutiny in order "to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Ibid.* In addition, in some circumstances, courts must permit defendants to ask questions about prospective jurors' racial biases during *voir dire*. See *Turner* v. *Murray*, 476 U. S. 28, 36–37 (1986); *Ham* v. *South Carolina*, 409 U. S. 524, 527 (1973). The principle underlying these cases is simple: "[R]acial bias in the justice system must be addressed—including, in some instances, after the verdict has been entered." *Pena-Rodriguez*, 580 U. S., at \_\_\_ (slip op., at 17). That is because racial bias is too grave and systemic a threat to the fair administration of justice to be tolerated or ignored.

In this case, no court has meaningfully reviewed Love's allegations of racial bias in violation of the Sixth and Fourteenth Amendments. Instead, the Court of Criminal Appeals "assume[d]" that the juror at issue was biased, but concluded that allowing him to sit on the jury was harmless. 2021 WL 1396409, *24. That is an inherently contradictory determination. If the juror were indeed biased, then because he sat on the jury, Love's conviction and sentence "would have to be overturned." *Ross*, 487 U. S., at 85.

The Court of Criminal Appeals reached its erroneous conclusion by relying upon a state-law rule that has no application to Love's claim. Texas courts have developed a rule aimed at evaluating the harm when a party is forced to use a peremptory challenge on a juror who should have been excluded for cause, thereby "'wrongfully depriv[ing]'" the party of an allotted challenge. *Hernandez* v. *State*, 563

S. W. 2d 947, 948 (Tex. Crim. App. 1978) (en banc).  In such cases, a trial court can cure any harm from its erroneous ruling by granting an additional peremptory strike.  See *Chambers*, 866 S. W. 2d, at 22–23.  This rule has no bearing on Love's federal constitutional claim that a racially biased juror actually sat on his jury and helped convict him and sentence him to death.  As to that type of claim, a previously used peremptory strike does not eliminate the need to inquire into the juror's bias.

The State acknowledges that the Court of Criminal Appeals "never reached the federal issues Love raises," Brief in Opposition 13, but the State contends that the court's harmless-error analysis constitutes an independent and adequate ground for the judgment below, precluding this Court's jurisdiction.  See *Foster* v. *Chatman*, 578 U. S. 488, 497 (2016).  As already shown, however, the state harmless-error rule was not "an 'adequate' basis for the court's decision" on Love's federal claim.  *Ibid.*  Indeed, in this situation, the rule is entirely beside the point.  The State's jurisdictional argument therefore fails.

The State also predicts that, on the merits, Love's claim would be rejected if it were reviewed, especially given the deference owed to the trial court's assessment of prospective jurors.  A reviewing court should give the trial judge appropriate deference, see *Uttecht* v. *Brown*, 551 U. S. 1, 7 (2007), but it may not turn a blind eye to claims of bias entirely.  The merits of Love's claim should be reviewed by the Court of Criminal Appeals in the first instance.  As this Court has often said, "'[w]e are a court of review, not of first view.'"  *Manuel* v. *Joliet*, 580 U. S. ___, ___ (2017) (slip op., at 14); see *Sandstrom* v. *Montana*, 442 U. S. 510, 527 (1979) ("As none of these issues was considered by the Supreme Court of Montana, we decline to reach them as an initial matter here").

\*    \*    \*

Over time, we have endeavored to cleanse our jury system of racial bias. One of the most important mechanisms for doing so, questioning during *voir dire*, was properly employed here to identify a potential claim of bias. Safeguards like this, however, are futile if courts do not even consider claims of racial bias that litigants bring forward. The task of reviewing the record to determine whether a juror was fair and impartial is challenging, but it must be undertaken, especially when a person's life is on the line. I would ensure that Love's claim is heard by the Court of Criminal Appeals, rather than leave these questions unanswered. I respectfully dissent.