RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0377P (6th Cir.)
File Name: 00a0377p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.                                      No. 99-5403

JAMES C. QUINN,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00085—Charles R. Simpson III,
Chief District Judge.

Submitted: September 22, 2000

Decided and Filed: October 25, 2000

Before: MERRITT, KENNEDY, and GILMAN, Circuit
Judges.

———————————

**COUNSEL**

**ON BRIEF:** Patrick J. Bouldin, ASSISTANT FEDERAL
PUBLIC DEFENDER, Louisville, Kentucky, for Appellant.
Terry M. Cushing, James A. Earhart, ASSISTANT UNITED
STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

1

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.  James C. Quinn was convicted of various drug-trafficking and firearm-possession offenses and was sentenced to 184 months of incarceration.  He appeals his conviction, contending that the district court abused its discretion in (1) forcing him to waste a peremptory challenge on a potential juror who should have been dismissed for cause, (2) allowing the arresting police officer to give what Quinn argues to be expert testimony without proper notice, (3) excluding the testimony of a proferred defense expert on fingerprinting, and (4) permitting the arresting officer to testify that Quinn had been apprehended in what was known to be a high-crime area.  For the reasons set forth below, we **AFFIRM** Quinn's conviction.

## I.  BACKGROUND

### A.  Factual background

At approximately 1:00 a.m. on May 23, 1993, three Louisville police officers observed that Quinn had stopped his car in the middle of a street in what was known to be a high-crime area.  Two pedestrians were speaking with Quinn through the open passenger-side window.  Both pedestrians entered the car as soon as they saw the police officers, and the car began to leave.  Observing that the car's license plate was not illuminated, the officers pulled the car over.

When Officer Lawrence Cushman first approached the driver's side window, he smelled the odor of marijuana emanating from the car. Officer Cushman ordered Quinn out of the car and requested that he produce identification and proof of insurance. Quinn produced identification, but he told Officer Cushman that he was uninsured.  Officer Cushman asked Quinn why he was there.  Quinn seemed nervous, and the officers believed that he was gauging whether he would be able to flee.  Officer Cushman then arrested Quinn for

evidence against the defendant, improper reference to the defendant's "200 pound" drug deal was harmless).

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Quinn's conviction.

violating the Kentucky statute that requires all drivers to possess proof of insurance.

The police subsequently searched the car and turned up roughly seventeen grams of crack cocaine and a loaded .32 caliber pistol. Both the drugs and the gun were located in a panel opening inside the driver-side door. Two-and-a-half weeks later, the police searched Quinn's residence in Louisville. They found a loaded .38 caliber revolver and ammunition for both .38 and .32 caliber firearms in Quinn's bedroom. Some of the .32 caliber ammunition had the same manufacturer as the ammunition found in the door panel of Quinn's car.

### B.   Trial background

Quinn was convicted by a jury for possession of more than five grams of crack cocaine in violation of 21 U.S.C. § 844, possession of crack cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), and two counts of possessing a firearm as a convicted felon in violation of 18 U.S.C. §§ 924(g)(1) & 924(a)(2). He was sentenced to 184 months' imprisonment, the length owing in significant part to Quinn's substantial criminal history and to the § 924(c) conviction, which carries with it a five-year minimum sentence that must be imposed consecutively.

Quinn argues on appeal that the district court abused its discretion in (1) declining to strike for cause one of the potential jurors, (2) permitting the investigating officer to testify that, in his experience, the quantity of crack cocaine recovered from Quinn's car was consistent with distribution as opposed to personal use, (3) excluding the testimony of a proffered expert witness for the defense, and (4) permitting one of the police officers to testify that the events leading up to Quinn's arrest took place in a high-crime area.

During voir dire, one of the potential jurors, Juror #35, testified that she had worked with "undercover police" and

had "several people put away" for using or distributing illegal drugs, including crack cocaine, in her previous job as a property manager for several Maryland apartment complexes. She also testified that she had been a witness in one federal drug-prosecution case and had been the foreperson of the jury in another.

Quinn's attorney moved to strike Juror #35 from the jury for cause, arguing that her background and initial equivocal answer ("probably") to the question of whether she could judge the case solely on the evidence presented demonstrated a pro-government bias. The district court denied the motion, reasoning that Juror #35, by subsequently answering the same question with an unequivocal "yes," indicated that she could set aside her past experiences. Quinn's attorney eventually used one of his eleven peremptory challenges to remove her from the jury.

During the trial, Officer Cushman testified that the neighborhood where Quinn was arrested was a "high drugs and trafficking" area. Officer Cushman also testified that (1) the seventeen grams of crack cocaine found in Quinn's car were, in Officer Cushman's experience, more consistent with distribution than personal use, (2) the total street value of the crack cocaine was approximately $800 to $1,200, and (3) he did not have the gun that was removed from Quinn's car tested for fingerprints because it was found in a wet paper bag, which Officer Cushman thought would prevent any fingerprints from being successfully recovered. Quinn's counsel objected to this testimony on the basis that he had not been previously notified of this "expert" testimony despite having requested disclosure of all the government's expert witnesses prior to the trial.

After Officer Cushman testified, the government called Special Agent George Huffman with the Bureau of Alcohol, Tobacco, and Firearms to establish that gun was in fact tested for fingerprints, but that none were found on the weapon. In response, Quinn's counsel sought to call an expert witness in fingerprinting technology to testify that fingerprints can be

thus conclude that the district court did not abuse its discretion in excluding the proferred testimony.

## D.  Testimony about the neighborhood's status as a high drug-trafficking area

Finally, Quinn challenges the district court's decision to admit Officer Cushman's testimony that the neighborhood where Quinn was arrested was a high drug-trafficking area. Quinn argues that the comment was gratuitous, serving no purpose other than to suggest to the jury that because he was arrested in an area known for drug-trafficking, he must have been up to no good. The district court's evidentiary ruling, however, may be disturbed only if we were to conclude that the district court abused its discretion in holding that the probative value of this evidence was not "substantially outweigh[ed] by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." FED. R. EVID. 403. This discretion in determining the proper balance is interpreted broadly. *See United States v. Feinman*, 930 F.2d 495, 499 (6th Cir. 1991) (upholding the trial court's decision to allow testimony about the defendant's prior involvement in marijuana distribution because the testimony was highly probative of the defendant's guilt or innocence, and the prejudice was mitigated by limiting jury instructions).

The testimony involving the location of the arrest was limited in its scope, and Quinn's counsel effectively cross-examined Officer Cushman concerning the legitimate reasons why Quinn might have been in the neighborhood. Furthermore, the government maintains that it offered this testimony simply to provide preliminary background information regarding why the arresting officers acted as they did, rather than to suggest anything about Quinn. Although the relevance of the nature of the neighborhood is marginal, we cannot say that the district court abused its discretion in allowing the testimony. Any possible error, moreover, was harmless in light of the overwhelming evidence against Quinn. *See id.* at 498 (finding that, given the force of other

a no win situation for the defense." Quinn's proposal to exclude the testimony, however, would create a no-lose situation for the defense. Moreover, the range of remedies set forth in Rule 16 is not so limited. *See* FED. R. CRIM. P. 16(d)(2) ("If . . . a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."). We thus find no merit to Quinn's "unfairness" argument.

## C.  Expert testimony of George Elder

In a related argument, Quinn claims that the district court abused its discretion by excluding the testimony of George Elder, an expert witness in fingerprinting technology. He argues that the expert would have testified that fingerprints can be extracted from items that have been placed in wet paper bags.

If the expert's proffered testimony is correct, then it would appear that Officer Cushman is not the world's foremost authority on fingerprinting. But even if that is so, the firearm in question actually had been checked for fingerprints by Special Agent Hoffman, and none were found. There is no suggestion that the expert was going to testify either that Officer Cushman's knowledge about fingerprinting was so deficient that Cushman might have wiped fingerprints off the gun by accident, or that the method by which the authorities stored and tested the gun for fingerprints was otherwise defective.

Elder's testimony would thus have been extrinsic evidence used to impeach a witness on an irrelevant collateral matter, which is inadmissible. *See United States v. Markarian*, 967 F.2d 1098, 1102 (6th Cir. 1992) (prohibiting the contradiction of collateral matters by extrinsic evidence, but permitting rebuttal testimony about a witness's drug trade when the witness's repeated and sweeping denials that he never sold controlled substances made his knowledge of drugs a central issue in determining the truthfulness of his testimony). We

obtained from items that have been stored in wet paper bags. The trial court excluded this testimony as irrelevant, because the gun in question was actually tested for fingerprints.

## II.  ANALYSIS

### A.  Challenge to potential juror

Quinn argues on appeal that Juror #35 had demonstrated that she could not reasonably be expected to be impartial. He claims that the district court should have removed her for cause rather than force Quinn to use up one of his peremptory challenges. The Supreme Court recently foreclosed this argument by holding that "a defendant's exercise of peremptory challenges . . . is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause." *United States v. Martinez-Salazar,* 120 S. Ct. 774, 782 (2000) (finding no constitutional violations when defendant was able to strike a juror who should have been removed for cause).

In addition, Quinn had no complaints about the individual jurors who actually decided the case. He thus failed to establish that, as a consequence of having to use an extra peremptory challenge, he had an insufficient number left to remove all the jurors that he wished to remove. *See Martinez-Salazar*, 120 S. Ct. at 783 (Souter, J., concurring) (suggesting that a district judge might be required to grant an additional peremptory challenge to a defendant who would have used all his peremptory challenges for noncurative purposes had the defendant not been required to use a peremptory challenge to remove a juror who should have been stricken for cause).

By removing Juror #35, Quinn exercised his peremptory challenge in the manner that it was intended to be used—to assure his right to an impartial jury. *See, e.g., United States v. Giacalone*, 588 F.2d 1158, 1164 (6th Cir. 1978) (observing that peremptory challenges are not constitutionally required, but rather provide a "cushion" of additional protection for the right of defendants to be judged by impartial juries). Quinn was confronted with a potential juror who, in Quinn's

opinion, should have been removed from the jury. Quinn removed her. The system worked precisely as intended. *See, e.g.*, *Martinez-Salazar*, 120 S. Ct. at 777 (concluding that when a potential juror should have been excused for cause but is not, the defendant "has not been deprived of any rule-based or constitutional right" if he "elects to cure [the] error by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat"). Under these circumstances, we do not need to pass on the merits of whether the district court was required to dismiss Juror #35 for cause.

## B.  Expert testimony of Officer Cushman

Quinn next argues that the government violated Rule 16 of the Federal Rules of Criminal Procedure by failing to notify him that Officer Cushman would testify about drug sales and fingerprint testing. Such testimony, Quinn claims, constituted expert testimony to which he was entitled to advance notice by the government.

We will not set aside a district court's discovery rulings unless we find an abuse of discretion. *See United States v. Bartle*, 835 F.2d 646 (6th Cir. 1987) (finding that the district court did not abuse its discretion by rejecting the defendant's request to exclude evidence in violation of a discovery order when admitting the evidence would cause little prejudice). Here, the district court had reasonable grounds to admit both the drug and fingerprint testimony. As the district court correctly observed, it is difficult to imagine that Quinn's counsel, an experienced attorney, would fail to realize that the government would offer testimony that the amount of crack cocaine found in Quinn's car was more consistent with distribution than with possession for personal use.

Regarding the fingerprint testing, the fact that Quinn's counsel himself brought up the subject at trial during cross-examination excuses the government's failure to alert Quinn that Officer Cushman would testify that he did not test the gun found in Quinn's car for fingerprints because of its wet condition. The purpose behind defense counsel's questioning

was apparently to show that the police were sloppy, that fingerprints can in fact be lifted from a gun found in a wet paper bag, and that fingerprints of someone other than Quinn might have been found on the gun if only the police had checked. To sever this chain of inferences, the government called to the stand a special agent of the Bureau of Alcohol, Tobacco, and Firearms, who testified that the gun, as well as the packaging on the drugs found in Quinn's car, actually had been checked for fingerprints, but none had been found.

Quinn also argues that the government was required to provide him with formal notice that it was planning on having Officer Cushman testify about the drug trade in Louisville. The government responds by pointing out that Quinn did not seek a continuance, and that he failed to demonstrate that the absence of notice resulted in any prejudice. *See Bartle*, 835 F.2d at 649-50 (agreeing that the defendant's failure to seek a recess or a continuance supported the district court's rejection of a defendant's request to suppress evidence that was not timely disclosed); *United States v. DeWeese*, 632 F.2d 1267, 1272-73 (5th Cir. 1980) (declining to reverse a conviction where the government failed to timely disclose to the defense the fact that a given expert witness would testify, because the defendant failed to demonstrate that the nondisclosure caused any prejudice). Although Quinn argues that he "could have very likely discredited [Officer Cushman's] testimony" regarding drug trafficking "and/or presented expert testimony to rebut this evidence," he offers no suggestion of how he would have done so. In light of Quinn's failure to seek a continuance or to demonstrate prejudice, we conclude that the district court did not abuse its discretion by allowing Officer Cushman to testify about the drug trade.

Quinn further claims that because he was incarcerated throughout trial, the prosecution's alleged disclosure violations rendered it unfair to require him to request a continuance, because granting one would have prolonged his incarceration. He argues that "such a situation is blatantly unfair as it creates a no lose situation for the prosecution, and