**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0612n.06
Filed: August 22, 2006

Nos. 03-6171, 03-6213

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

        **Plaintiff-Appellee,**

**ON APPEAL** FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

v.

**OPINION**

TAMBERLY MARSHALL &
JAMES R. COPE,

        **Defendants-Appellants.**

_____

Before: NORRIS and BATCHELDER, Circuit Judges; and RICE,[*] Senior District

Judge.

**WALTER HERBERT RICE, Senior District Judge.**

      Defendants-Appellants Tamberly Marshall ("Marshall") and James R. Cope

("Cope") were each charged in a Superseding Indictment with one count of attempting

to manufacture methamphetamine, in violation of 21 U.S.C. § 846 (Count 1); one

---

[*]The Honorable Walter H. Rice, Senior United States District Judge for the
Southern District of Ohio, sitting by designation.

count of possessing with intent to distribute and to distribute methamphetamine, in violation of 21 U.S.C. § 841(a) (Count 2); one count of possessing pseudoephedrine, having reasonable cause to believe that the substance would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c) (Count 3); and one count of possessing equipment, products and materials which may be used to manufacture methamphetamine, having reasonable cause to believe that the equipment, products and materials would be so used, in violation of 21 U.S.C. § 843(a) (Count 4).[1] Cope was also charged with one count of possessing a firearm in and affecting commerce, after having been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g) (Count 5).[2] They were convicted after a jury trial of all counts charged against them. Marshall and Cope were subsequently sentenced to 100 months and 188 months of incarceration, respectively. They now appeal, challenging their convictions and sentences. For reasons which follow, this court affirms the convictions, vacates the sentences imposed upon Marshall and Cope and remands for re-sentencing in accordance with *United States v. Booker*, 543 U.S. 220 (2005).

## I. Factual Background

[1]Each of those four counts also charged Cope and Marshall with aiding and abetting each other in the commission of those offenses.

[2]The court will refer to Cope and Marshall collectively as "Appellants."

On December 20, 2001, Kentucky State Police Detective Rodger Cooper ("Cooper") stopped at a Winn-Dixie store in Manchester, Kentucky, in order to purchase flour to bake bread for the holidays. While waiting in the checkout line, he observed a female, later identified as Marshall, purchasing four boxes of pseudoephedrine. Based upon seventeen years experience investigating drug trafficking offenses, including offenses concerning methamphetamine, Cooper knew that pseudoephedrine was one of the primary ingredients used to manufacture methamphetamine, and seeing someone purchase such a large amount of pseudoephedrine made him suspicious. Cooper watched Marshall leave the store and give the pseudoephedrine to a male, subsequently identified as Cope, who put it in the rear of a pickup truck. The Appellants then left the Winn-Dixie store together in that pickup.

Cooper followed, as Cope and Marshall traveled in that vehicle to a Wal-Mart. The detective also followed the Appellants as they entered that store. Inside, Cooper saw Cope purchase four boxes of pseudoephedrine and Marshall purchase five boxes of that substance. The Appellants then left the Wal-Mart, put their purchases in the back of the pickup and drove to a Dollar General store.[3] Cooper remained in his vehicle at the Dollar General. He was, however, able to see both Cope and Marshall enter that store and subsequently leave carrying packages which were placed in the rear of the pickup.

---

[3]Both the Wal-Mart and the Dollar General stores were also located in Manchester, Kentucky.

While he was waiting outside the Dollar General store, Cooper contacted the Manchester Police Department for assistance. Officer George Stewart ("Stewart") of that Department responded to Cooper's request. Stewart followed the pickup truck in which the Appellants were traveling, as it was driven away from the Dollar General store. Stewart stopped that vehicle for failing to give a turn signal. Stewart was joined by Kentucky Motor Vehicle Enforcement Officer Brian Jackson ("Jackson"), after which the officers searched the pickup truck in which the Appellants had been traveling, discovering nineteen boxes of pseudoephedrine.[4] During the search of that vehicle, the officers also discovered a three-year old prescription bottle, which had been issued to Cope, that contained two small bags of methamphetamine. In the back of the pickup truck, the officers discovered items commonly used to manufacture methamphetamine, including pots, pans, bowls, stirring spoons and measuring cups, as well as a piece of wood that had been used to smoke methamphetamine.

After the search had been conducted, Cope and Marshall were arrested and transported to the police station, where Marshall told officers that she did not know anything about the substances that had been found in the pickup truck and that she would not have been in the truck if she had known about them.

After Cope and Marshall had been arrested, they gave the officers consent to search their residences. When officers searched the apartment Marshall had

---

[4]Nine of the boxes had been purchased at Wal-Mart, six at the Dollar General store and four at Winn-Dixie. Each box contained 24 30-milligram pills of pseudoephedrine hydrochloride.

identified as her residence, they did not discover any evidence of narcotics. Officers traveled to the house that Cope had identified as his residence, where they were met by an individual at the front door. That individual consented to the search of the residence, a white, wood-sided house. Officers did not discover any evidence of drug trafficking activity in that house, although they did discover information that led them to believe that Cope resided in a trailer about two miles away, in the vicinity of Boonesborough, Kentucky.[5] Upon arriving at that location, officers saw a cooler on the front porch with Cope's name on it and a Ford pickup truck parked in the driveway behind the trailer. That vehicle was registered to Cope. In the backyard, officers saw what was described at trial as two "burn barrels." Near those barrels, they observed a number of discarded cans that had contained ether with holes punched in them.[6]

After securing that site, a number of officers traveled to Boonesborough, in order to obtain a search warrant. Cooper executed the affidavit which was used to obtain the warrant from the Owsley County Trial Commissioner. When officers executed that warrant, they discovered inside the trailer a number of firearms, a triple beam scale, a photograph of Cope and some of his personal records, such as cancelled checks, a bill and medical records. During a search of an outbuilding,

---

[5]Officers had discovered a key to that trailer on Cope's person when they had searched him.

[6]Ether is an ingredient used in the manufacture of methamphetamine. When the individual manufacturing methamphetamine is ready to use ether, he will typically punch a hole in the side or bottom of a can that contains ether in order to extract that substance.

officers detected the odor of anhydrous ammonia, a colorless gas used in manufacturing methamphetamine, and other materials evidencing that the manufacturing of that controlled substance was ongoing at that location. Inside the Ford pickup truck belonging to Cope, which was parked in the driveway behind the trailer, officers discovered a prescription bottle containing methamphetamine that had been issued to him. They also discovered documents inside that vehicle, which linked Cope and Marshall to it.

Before trial, Cope filed a motion, requesting that the District Court suppress the evidence that had been obtained when the search warrant was executed at his residence in the vicinity of Boonesborough. Cope had argued that such evidence must be suppressed, because the search warrant had not been issued in compliance with Rule 41 of the Federal Rules of Criminal Procedure. He had asserted that, even though Cooper, who had executed the affidavit with which the warrant had been obtained, was employed by the Kentucky State Police, he was a federal law enforcement officer, given that he had been deputized by the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA"). According to Cope, Rule 41 governed the issuance of the search warrant, since Cooper was a federal law enforcement officer. The District Court denied that motion without conducting an evidentiary hearing, reasoning that Cooper was not such.

During trial, Cope testified that, although he owned the property upon which the trailer was located, he did not live there. He also sought to introduce testimony from Deputy Jason Richardson ("Richardson") of the Owsley Country, Kentucky,

Sheriff's Defendant and Trooper C.J. Hall ("Hall") of the Kentucky State Police to the effect that a methamphetamine laboratory had been found Cope's property upon which the trailer was located, five or six months <u>after</u> Cope had been arrested and incarcerated. The District Court refused to admit such testimony, reasoning that it was not relevant, as that term is defined by Fed. R. Evid. 401, and excludable under Fed. R. Evid. 403, if relevant.

Over Marshall's objection, the District Court told the jury that the Superseding Indictment charged her with committing the offenses set forth therein on or about December 20 or 21, 2001. The District Court also instructed the jury that the Government need only prove that the offenses occurred on or about those dates. In addition, the District Court instructed the jury over Marshall's objection that it could find her guilty of all offenses charged under an aiding and abetting theory.

After the Appellants had been convicted, the District Court sentenced them in accordance with the then mandatory United States Sentencing Guidelines. In computing Cope's sentence under the Sentencing Guidelines, the District Court, over Cope's objection, enhanced his offense level by two levels in accordance with § 2D1.1(b)(1) of the Sentencing Guidelines for possession of a firearm.

## II. Analysis

As is indicated above, the Appellants challenge their convictions and their sentences. This court initially addresses Cope's challenges to his convictions,

following which it turns to Marshall's challenges to hers.  This court then rules upon the Appellants' arguments concerning the sentences imposed upon them.

## A.  Cope's Challenges to His Convictions

Cope argues that his convictions must be reversed, because the District Court abused its discretion by refusing to admit testimony from Richardson and Hall, and that it erred in refusing to suppress the evidence that was seized when the search warrant was executed at his residence in Boonesborough.  This court addresses those arguments in the above order.

### 1.  Refusal to Admit Testimony from Richardson and Hall

At trial, Cope sought to introduce testimony from Richardson and Hall that a methamphetamine lab had been discovered on his property five or six months <u>after</u> he was arrested for the offense charged herein.  Cope was incarcerated when that discovery was made.  The District Court refused to admit that testimony, concluding the it was not relevant under Fed. R. Evid. 401, and, if relevant, was excludable in accordance with Fed. R. Evid. 403.[7]  On appeal, Cope contends that

---

[7]The record is somewhat ambiguous as to whether the District Court concluded that the testimony in question was excludable under Rule 403.  After indicating that testimony from Richardson and Hall would not be relevant under Rule 401, the District Court indicated that the testimony "would be admissible under Rule 403 for grounds previously stated by Mr. Smith [the prosecutor]."  J.A. at 263.  Although this excerpt from the record seemingly indicates that the District Court was of the opinion that the testimony would have been admissible under Rule 403, we do not interpret it in that manner.  The prosecutor argued that the evidence is excludable under Rule 403, even if marginally relevant.  J.A. at 245.  Indeed, he spent the majority of his argument on that proposition.  Therefore, we

the District Court abused its discretion by refusing to admit that testimony. This court reviews all evidentiary rulings under the "abuse of discretion" standard. *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir.), *cert. denied*, 540 U.S. 973 (2003). *See also General Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997) ("We have held that abuse of discretion is the proper standard of review of a district court's evidentiary rulings.").

Accepting for present purposes that testimony from Richardson and Hall would have been marginally relevant, this court concludes that the District Court did not abuse its discretion by concluding that it is excludable under Rule 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Herein, the prosecutor argued that the probative value of testimony from Richardson and Hall would be substantially outweighed by the danger of confusion of the issues. J.A. at 245. A district court's balancing of the probative value of evidence against the danger of confusion is to be "interpreted broadly." *United States v. Quinn*, 230 F.3d 862, 867 (6th Cir. 2000). Cope sought to introduce the testimony in question in order to raise an inference that he had not operated the methamphetamine laboratory which had been discovered when his residence was

conclude that the District Court, in reality, was of the opinion that testimony from Richardson and Hall, that a lab used to manufacture methamphetamine had been discovered on Cope's property five or six months after he had been arrested for the offenses charged herein, was excludable in accordance with Rule 403.

- 9 -

searched on December 20, 2001, because he could not have operated the one that was discovered therein the following May, since he was incarcerated at the time. To meet this inference, the Government could conceivably be required to call witnesses, whose testimony would focus upon matters relating to the discovery and operation of the laboratory in May, 2002, rather than the evidence relating to the crimes with which Cope was charged. Confusion of the issues or misleading of the jury as to the true issues at trial could well have resulted. Accordingly, this court concludes that the District Court did not abuse its discretion in excluding testimony from Richardson and Hall.

## 2. Search Warrant

"In reviewing the denial of a motion to suppress, this court reviews findings of fact for clear error and conclusions of law de novo." *United States v. Dillard*, 438 F.3d 674, 680 (6th Cir. 2006). Prior to trial, Cope requested that the District Court suppress the evidence seized when his residence (i.e., the trailer and outbuildings) was searched pursuant to a search warrant issued by the Owsley County Trial Commissioner. Cope contended that the Trial Commissioner was not authorized by Rule 41 of the Federal Rules of Criminal Procedure to issue search warrants. According to Cope, Rule 41 was applicable, because Cooper was a federal law enforcement officer when he executed his affidavit with which the warrant was obtained. The District Court rejected that request, concluding that Rule 41 did not apply, given that Cooper was not then acting as a federal law enforcement officer. Before this court, Cope argues that the District Court abused its discretion by

refusing to suppress the evidence seized as a result of the execution of the search warrant at his residence, based upon that alleged violation of Rule 41. In response, the Government contends that Rule 41 was not violated, given that Cooper was not acting as a federal law enforcement officer when he requested the warrant. Alternatively, the Government contends, even if Rule 41 was violated, said violation does not justify the suppression of the evidence seized from Cope's residence. For reasons which follow, this court concludes that Cooper was not acting as a federal law enforcement officer when he sought the search warrant and that, therefore, the issuance of same by the Owsley County Trial Commissioner did not violate Rule 41. Therefore, we affirm the decision of the District Court to overrule Cope's suppression motion, without addressing the Government's alternative argument as to the effect of the exclusionary rule.

Rule 41 applies only to searches in which federal law enforcement officers are involved. *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999). In the case at bar, Cope claims that he was entitled to suppression of the evidence discovered on his property, because Cooper was acting in a federal capacity when he obtained a search warrant for Cope's property. He urges the court to find that Cooper was acting as a federal law enforcement officer, because he had been deputized by two federal agencies, the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA"), and the case was prosecuted in federal court.

Cope was entitled to neither an evidentiary hearing nor suppression. "An evidentiary hearing is required only if the motion is sufficiently definite, specific,

detailed, and non-conjectural to enable the court to conclude that *contested issues of fact* going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (internal quotation marks and citation omitted; emphasis in the original). Cope's motion to suppress raised no contested issues of fact. The Government does not dispute that Cooper has been deputized by the FBI and the DEA. It does not follow, however, that he was acting in a federal capacity while investigating this case. The record reveals that Cooper had been a member of the Kentucky State Police for twelve years at the time of Cope's trial. He was a member of the drug enforcement branch unit responsible for the eastern half of Kentucky. He filed his affidavit for a search warrant in his capacity as a state officer using a Commonwealth of Kentucky form.

Cooper's affidavit reveals no federal involvement. It states that he spotted Marshall and Cope while he was buying flour at the Winn-Dixie. He was off duty at the time. Of his own volition, and without direction or cooperation from federal agents, Cooper followed Marshall and Cope first to Wal-Mart and then to Dollar General. He called the Manchester Police Department for back-up, and an officer from that department apprehended Marshall and Cope. The affidavit concludes by stating that Cooper is a Kentucky State Police-certified methamphetamine lab responder. The Owsley County Trial Commissioner signed the search warrant, and the search to which Cope objects was conducted entirely by state and local officers. Federal agents were not involved in the search. In short, the only federal involvement revealed by the record is that of the U.S. Attorney who prosecuted the case.

There were no contested facts before the District Court that would have warranted an evidentiary hearing, and the evidence in the record is not sufficient to support Cope's contention that Cooper was acting in a federal capacity. Contrary to Cope's assertions, this case bears no similarity to *United States v. Searp*, 586 F.2d 1117 (6th Cir. 1978), where "[a]n FBI agent was the affiant who swore to the facts supporting the issuance of the warrant, there were five FBI agents present at the search, and a federal agent directed the search." *Id.* at 1121. The investigation of Cope's case was not federal in nature, and no federal agents participated in his discovery and apprehension. This court has held on two prior occasions that the deputization of a state officer does not automatically render the officer's actions federal in nature. *See United States v. Hooper*, 163 Fed. Appx. 397, 398 (6th Cir. 2006) (the fact that state law enforcement officers hold federal deputations does not render their actions federal); *United States v. Greer*, 1985 WL 13251, *1 (6th Cir. 1985) (unpublished) ("Because of the increasing cooperation between federal, state and local law enforcement agencies involved in narcotics enforcement, large numbers of state and local police officers undoubtedly hold federal commissions. This fact, standing alone, does not transform their every act into a federal one."). Because the record indicates no federal involvement whatsoever in the investigation of Cope's crimes, we hold that the District Court did not err in its decision that Rule 41 was not violated by the issuance of a search warrant by the Owsley County Trial Commissioner.

Accordingly, we affirm the decision of the District Court to overrule Cope's motion to suppress evidence.

B.  Marshall's Challenges to Her Conviction

Marshall presents four challenges to her conviction, to wit: 1) the District Court erred by refusing to admit testimony from Richardson and Hall; 2) the District Court constructively amended the Indictment by giving an "on or about" instruction to the jury; 3) the District Court erred in giving the jury an aiding and abetting instruction; and 4) sufficient evidence was not presented to support her convictions.  Based upon the above reasoning, this Court rejects Marshall's assertion that the District Court erred in refusing to admit testimony from Richardson and Hall.  We discuss her other challenges to her convictions in the above order.[8]

1.  "On or About" Jury Instruction

At trial, the District Court instructed the jury that:

> The indictment charges that the offenses charged occurred on or about December 20 and 21, 2001.  The government does not have to prove that the offenses happened on those exact dates, but the government must prove that the offense (sic) happened reasonably close to those dates.

J.A. at 318.  Marshall argues that the District Court constructively amended the Superseding Indictment by giving that instruction.  "A constructive amendment

---

[8]The Government points out that, since Marshall did not join in Cope's request to introduce testimony from Richardson and Hall, her challenge to the District Court's decision to exclude that testimony must be reviewed for plain error.  Even were this so, Marshall's challenge would fail.  The Supreme Court has established a four-part test to determine whether a District Court has committed plain error, the first prong of which is that error has been committed.  *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).  Given that the District Court did not err in refusing to admit the evidence of methamphetamine manufacturing activities being conducted at Cope's residence, some five to six months after the events in question, it is not necessary to consider the other prongs of that four-part test.

results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment." *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir. 2005) (internal quotation marks and citations omitted), *cert. denied*, 126 S.Ct. 1603 (2006). Herein, the terms of the Superseding Indictment were not altered as a result of the District Court giving the foregoing "on or about" instruction, because each of the four counts of the Superseding Indictment which charged Marshall with an offense alleged that she had committed the offense on or about either December 20 or 21, 2001. J.A. at 23-25.

### 2. Aiding and Abetting Jury Instruction

Count 1 of the Superseding Indictment charged Marshall and Cope with attempting to manufacture methamphetamine and aiding and abetting in that offense. At trial, the District Court instructed the jury on the elements of aiding and abetting on that count.[9] Before this court, Marshall argues that the District Court erred in giving that instruction, because there was no evidence to support such. We cannot agree. Aiding and abetting has been described as one's desire to associate herself with a criminal venture in some manner and that she participate in it as something that she wishes to bring about and seek by her action to make

---

[9]The District Court also gave aiding and abetting instructions on Counts 2, 3 and 4. Marshall, however, has not challenged those instructions on appeal.

- 15 -

the venture succeed.  *United States v. Ostrander*, 411 F.3d 684, 693 (6th Cir.)

(citations omitted), *cert. denied*, 126 S.Ct. 469 (2005).  Herein, evidence was

introduced that Marshall and Cope spent December 20, 2001, together, traveling

from store to store purchasing boxes of pseudoephedrine, one of the primary

ingredients of methamphetamine.  Given that this evidence supports the

proposition that Marshall had associated herself with and participated in the

criminal venture with which she was charged in Count 1, i.e., attempting to

manufacture methamphetamine, the District Court did not err in giving the aiding

and abetting instruction for that count.


### 3.  Sufficiency of the Evidence

Marshall argues that sufficient evidence was not introduced to support her

conviction for attempting to manufacture methamphetamine, as charged in Count 1

of the Superseding Indictment, and possession of methamphetamine with intent to

distribute and to distribute, as charged in Count 2 of that document.[10]  This court

applies a familiar standard of review to a challenge to the sufficiency of the

evidence to support a criminal conviction:

> This court's review for the sufficiency of trial evidence is limited.  *United States v. Gaitan-Acevedo*, 148 F.3d 577, 586 (6th Cir.1998).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

[10]Although Marshall challenges the sufficiency of the evidence to support her convictions on all four counts in the Superseding Indictment, she only presents concrete arguments pertaining to the Counts 1 and 2.  It is settled that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000).

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

*United States v. Samuels*, 308 F.3d 662, 666 (6th Cir. 2003) (emphasis and bracket in the original), *cert. denied,* 537 U.S. 1225 (2003).

"To convict a person of an 'attempt' to commit a drug offense, the government must establish two essential elements: (1) the intent to engage in the proscribed criminal activity, and (2) the commission of an overt act which constitutes a substantial step towards commission of the proscribed criminal activity." *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989). The substantial step must be comprised of objective acts which "mark defendant's conduct as criminal in nature." *Id.* (internal quotation marks and citation omitted). *See*, *also*, *United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir.), *cert. denied*, 528 U.S. 844 (1999). In *United States v. Salgado*, 250 F.3d 438 (6th Cir.), *cert. denied*, 534 U.S. 916 (2001), this court held that "[t]o establish the charge of possession with intent to distribute illegal drugs under 21 U.S.C. § 841(a)(1) ..., the government had to prove that: (1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute ..." and that "[t]o prove that a defendant aided and abetted the possession with intent to distribute a controlled substance, the government must establish that the defendant participated in the venture as something he wished to bring about and sought to make succeed." *Id.* at 447.

Herein, viewing the evidence in the manner most favorable to the Government, a rational trier of fact could have found that the essential elements of

those two offenses were proved beyond a reasonable doubt.  Marshall traveled with Cope to three stores on December 20, 2001, where she purchased pseudoephedrine, an ingredient used to manufacture methamphetamine.  She gave the pseudoephedrine she had purchased to Cope.  Officers discovered methamphetamine in the pickup truck in which Marshall had been traveling with Cope on that date.  In addition, Marshall was linked to the methamphetamine laboratory found at Cope's residence near Boonesborough, by the discovery of a document addressed to her in the truck owned by Cope which was parked at that residence.

### C.  Sentencing Issues

Cope argues that the District Court erred by applying § 2D1.1(b)(1) of the United States Sentencing Guidelines.  Both Appellants request that this Court vacate their sentences and remand for re-sentencing in accordance with *Booker*. For reasons which follow, this court rejects Cope's challenge to the application of § 2D1.1, while vacating the Appellants' sentences and remanding for re-sentencing under *Booker*.

In computing Cope's sentence under the Sentencing Guidelines, the District Court applied § 2D1.1(b)(1), which directs courts to increase a defendant's base offense level by 2, "if a dangerous weapon (including a firearm) was possessed." Cope argues that the District Court erred in applying that enhancement, because he did not possess a firearm during a drug trafficking offense.  In order to justify an enhancement under § 2D1.1, the government must prove by the preponderance of

the evidence that the defendant possessed the firearm.  *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir.), cert. denied, 540 U.S. 1063 (2003).  "A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review."  *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (internal quotation marks and citation omitted), *cert. denied*, 537 U.S. 1177 (2003).  Herein, evidence was introduced, demonstrating that law enforcement officers discovered firearms in Cope's residence at which methamphetamine had been manufactured.  Therefore, the finding of the District Court herein that Cope possessed a firearm is not clearly erroneous.  *See United States v. Moses*, 289 F.3d 847, 850 (6th Cir. 2002) (affirming decision to enhance base offense level in accordance with § 2D1.1(b)(1), where evidence showed that the defendant kept firearms at his house which he used as for his marijuana drying operation).[11]

This court agrees that it must remand for re-sentencing in light of our holding in *United States v. Barnett*, 398 F.3d 516 (6th Cir.2005).  Therein, this court established a presumption that any pre-*Booker* sentencing determination constitutes plain error because the Guidelines were then mandatory.  *Id*. at 526-29.

---

[11]Relying upon *Blakely v. Washington*, 542 U.S. 296 (2004), Cope argues that the jury, rather than the District Court, should have made the findings necessary to support the enhancement under § 2D1.1(b)(1).  Below, we vacate Cope's sentence and remand for re-sentencing under *Booker*.  In light of that decision, the Sentencing Guidelines are advisory; therefore, permitting the District Court to make factual findings to enhance the advisory Guidelines sentencing range does not offend the Sixth Amendment.  Booker, 543 U.S. at 233 (majority opinion of Stevens, J.) (noting that if the Sentencing Guidelines were "merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment").

Consequently, a defendant must be re-sentenced, unless the sentencing record contains clear and specific evidence to the effect that, even if the sentencing court had known that the Guidelines were advisory, it would have sentenced the defendant to the same (or a longer) term of imprisonment. *Id.* The record before us lacks such clear and specific evidence. Therefore, we remand this matter to the district court for the limited purpose of re-sentencing Cope and Marshall in accordance with the Supreme Court's decision in *Booker*.

## III. Conclusion

For reasons stated herein, we **AFFIRM** Marshall's and Cope's convictions and the decision of the District Court to enhance Cope's base offense level in accordance with § 2D1.1(b)(1). However, we **VACATE** the Appellants' sentences and **REMAND** for re-sentencing consistent with this opinion and the Supreme Court's decision in *Booker*.