RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0275p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

               *Plaintiff-Appellee,*

     *v.*

JAMES QUINN,

               *Defendant-Appellant.*

No. 08-6217

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00085-001—Charles R. Simpson III, District Judge.

Submitted: July 29, 2009

Decided and Filed: August 6, 2009

Before: GILMAN and McKEAGUE, Circuit Judges; SARGUS, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Frank W. Heft, Jr., Patrick J. Bouldin, OFFICE OF THE FEDERAL DEFENDER, Louisville, Kentucky, for Appellant. Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. James Quinn was sentenced in 1999 to 124 months of imprisonment for possession of crack cocaine and for being a felon in possession of a firearm. He received an additional 60-month sentence for carrying a firearm in relation to a drug-trafficking crime, to be served consecutively. In 2008, the

---

[*] The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

district court reduced Quinn's total sentence by 10 months, giving effect to a retroactive amendment to the United States Sentencing Guidelines relating to the crack-cocaine/powder-cocaine disparity. Quinn now argues on appeal that the district court should have reduced his sentence even more, but that it failed to do so because it used the wrong offense level in modifying his sentence under the Guidelines. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

### A.  Conviction and appeal

In 1998, a jury convicted Quinn of possessing more than five grams of crack cocaine, in violation of 21 U.S.C. § 844, possessing crack cocaine with the intent to distribute the drug, in violation of 21 U.S.C. § 841(a)(1), carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c), and possessing firearms after a felony conviction, in violation of §§ 924(g)(1) and 924(a)(2). This court has previously set forth the facts underlying Quinn's conviction in *United States v. Quinn*, 230 F.3d 862, 864 (6th Cir. 2000) (affirming Quinn's conviction).

### B.  Sentencing

In March 1999, the district court sentenced Quinn to a total of 184 months of imprisonment. Sixty months of the sentence arose from the third count of conviction—carrying a firearm in relation to a drug-trafficking crime. This third-count sentence represented the statutory minimum for the offense, *see* 18 U.S.C. § 924(c)(1)(A)(i), and the district court determined that the 60 months of imprisonment would run consecutively with the remaining sentence, as required by § 924(c)(1)(D)(ii).

The remainder of Quinn's sentence was based upon the then-mandatory United States Sentencing Guidelines. Neither party disputes the correctness of the initial Guidelines calculation. For the two crack-cocaine crimes, the base offense level was 26. The two firearm-possession counts yielded a base offense level of 20. Using the multiple-count calculation framework of U.S.S.G. § 3D1.4, the court concluded that the level-26 group (the crack-cocaine crimes) yielded one "unit" for multiple-count

purposes. The level-20 group (the firearm-possession crimes) added another half unit, because the level-20 group was between 5 and 8 levels less serious than the level-26 group. *Id.* A total of one and a half multiple-count units resulted in a one-level increase to Quinn's base offense level of 26. With the final offense level of 27 and a criminal history category of IV, Quinn's Guidelines range was 100 to 125 months of imprisonment. The district court imposed a sentence of 124 months. Quinn did not challenge his sentence when he appealed his conviction to this court in 1999. *Quinn*, 230 F.3d at 862.

## C. 18 U.S.C. § 3582(c)(2) modification of Quinn's sentence

In 2007, the Sentencing Commission amended U.S.S.G. § 2D1.1(c) to reduce the base offense level for most crack-cocaine offenses by two levels. U.S.S.G. App. C, Amend. 706. The Commission also made the amendment retroactive. U.S.S.G. § 1B1.10(c). In light of these changes, the district court, pursuant to 18 U.S.C. § 3582(c)(2), elected to revisit Quinn's sentence in 2008. Section 3582(c) is titled "Modification of an imposed term of imprisonment." It provides in pertinent part that a term of imprisonment may not be modified after it is imposed

> except that[,] . . . in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission[,] . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

The district court thus applied Amendment 706 to reduce Quinn's base offense level for the crack-cocaine crimes from 26 to 24. Next, the court reapplied the multiple-count calculation of U.S.S.G. § 3D1.4. The crack-cocaine crimes again yielded one unit, but the firearm-possession crimes now yielded a second full unit rather than the half unit that had applied in the original sentencing calculation. This occurred because the firearm-possession crimes now fell within four offense levels of the crack-cocaine

crimes. These two units under § 3D1.4 led to a two-level increase in Quinn's revised base offense level of 24. The resulting offense level of 26 was thus only one level less than the offense level at the time of Quinn's original sentencing, and the new Guidelines range was 92 to 115 months of imprisonment. Quinn received a new sentence of 114 months for the counts in question. Combined with the still-mandatory 60-month consecutive sentence for carrying a firearm in relation to a drug-trafficking crime, his new total sentence was 174 months of imprisonment.

When presented with the district court's recalculation analysis as outlined above, Quinn objected to the fact that he did not receive a two-level decrease to his *final* offense level—a result that he had apparently expected under Amendment 706. He accordingly argued in his Recalculation Memorandum that the district court should "reduce his final offense level a full two levels, from 27 to 25," rather than employing the U.S.S.G. § 3D1.4 procedure that led to a final offense level of 26, as described above. The district court rejected Quinn's request. In its order, the court held that Quinn's Guidelines range at the sentence-modification proceedings could not be calculated without reference to § 3D1.4 because "the court shall substitute only [the relevant amendment] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

Quinn now appeals. He asks us to determine whether the district court erred "in failing to give [him] a full, two level reduction on his crack cocaine sentence."

## II.   ANALYSIS

Quinn's argument on appeal, stated at its most basic level, is that the district court used the wrong offense level under the Guidelines when it modified his sentence. The district court employed a final offense level of 26, but Quinn believes that he is entitled to be sentenced using an offense level of 25. Quinn made that argument to the district court and thus has preserved this legal issue—whether the district court erred in assigning him an offense level of 26 rather than 25—for de novo review on appeal. *See United States v. Peveler*, 359 F.3d 369, 373 (6th Cir. 2004) ("[T]o the extent that . . .

arguments . . . rest on the legal interpretation of various [sentencing] guidelines, the district court's interpretation of the sentencing guidelines presents a question of law, subject to de novo review." (internal quotation marks omitted)).

In his appellate briefing, Quinn supports his basic assertion that the district court used the wrong offense level when it modified his sentence with detailed reasoning that he did not present to the district court.  He describes the district court's use of U.S.S.G. §§ 1B1.10(b)(1) and 3D1.4 as "mechanical," and argues that "the District Court's reliance on [those two Guidelines] is misplaced because it effectively applied those Guidelines as being mandatory."  According to Quinn, *United States v. Booker*, 543 U.S. 220 (2005), gave the district court discretion to recalculate his Guidelines range without reference to those provisions.  The government counters with the categorical argument that "sentencing modification pursuant to 18 U.S.C. § 3582(c)(2) was unaffected by *Booker*."

Neither party's argument quite hits the mark.  Quinn, for his part, misstates the effect of *Booker* on the discretion of district judges in sentencing.  As this court and the Supreme Court have explained many times, district judges *must* correctly perform the largely mechanical calculation of the advisory Guidelines range before exercising discretion in selecting a sentence.  *E.g.*, *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."); *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (reviewing a sentence to determine whether the district court "properly calculated the applicable advisory Guidelines range").

Quinn's argument that the district judge had authority under *Booker* to disregard U.S.S.G. §§ 1B1.10(b)(1) and 3D1.4 and simply subtract two levels from Quinn's previous final offense level therefore fails.  Amendment 706 affected only U.S.S.G. § 2D1.1(c)—the portion of the Guidelines that sets forth the *base* offense level for crack-cocaine offenses.  All other Guidelines provisions that affect the *final* offense level remain unchanged.  *See* U.S.S.G. § 1B1.10(b)(1).  *Booker* did not free the district court

to disregard those other provisions and simply subtract two levels from Quinn's final offense level. *See Gall*, 128 S. Ct. at 596.

Simply stated, Amendment 706 resulted in a reduction of only one level in Quinn's case because he was convicted of firearm-possession crimes as well as crack-cocaine crimes. When the severity of the crack-cocaine crimes was lessened by Amendment 706, the *relative* impact of the firearms possession on Quinn's Guidelines range increased. *See* U.S.S.G. § 3D1.4. We therefore find no error in the district court's use of §§ 1B1.10(b)(1) and 3D1.4 to calculate Quinn's revised Guidelines range.

The government directly responds to Quinn's argument only in passing, correctly stating that "even at original sentencing proceedings under *Booker*, the district court must correctly calculate the guidelines range. Once the court has correctly calculated the guidelines range, it has discretion to vary from that range either upward or downward." The government then proceeds to spend the majority of its brief arguing that district courts have no discretion to vary outside the recalculated Guidelines range in sentence-modification proceedings under 18 U.S.C. § 3582(c)(2).

But Quinn did not ask the district court to grant him a downward variance and has not argued on appeal that the district court should have—or could have—varied below the properly calculated Guidelines range. In fact, Quinn explicitly stated that "the only relief [he] seeks is a full 2 level reduction in his crack sentence pursuant to Amendment 706," and contrasts his request with the arguments of defendants in other cases who requested outside-Guidelines sentences at the modification stage. The government's arguments regarding the somewhat murky interplay between the *Booker* line of Supreme Court cases and 18 U.S.C. § 3582(c)(2) are therefore only tangentially relevant to this case. *Compare* U.S.S.G. § 1B1.10(b)(2) (prohibiting district courts, when modifying pre-*Booker* sentencing determinations, from using 18 U.S.C. § 3582(c)(2) to reduce a term of imprisonment below the bottom of the recalculated Guidelines range), *and United States v. Rhodes*, 549 F.3d 833 (10th Cir. 2008) (holding that district courts lack authority to impose a sentence that falls below the amended Guidelines range in a sentence-modification proceeding) *with United States v. Johnson*,

553 F.3d 990, 992 (6th Cir. 2009) (making note of a district court's authority to "reject and vary from the crack-cocaine Guidelines based solely on a policy disagreement with those Guidelines" (citing *Spears v. United States*, 129 S. Ct. 840 (2009))), *and United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007) (holding that a newly calculated Guidelines range in a sentence-modification proceeding is advisory). We thus note that a circuit split exists on the question of whether a Guidelines range is mandatory in a sentence-modification proceeding under § 3582(c)(2), but decline to resolve the issue in this case because Quinn has not requested a downward variance.

In sum, we conclude that the district court properly calculated Quinn's post-Amendment 706 Guidelines range. We also reiterate that, in sentence-modification proceedings, just as in an original sentencing, *Booker* and its progeny do not alter the district court's obligation to make such calculations according to the letter of the Guidelines. But because Quinn has not sought a below-Guidelines sentence either in the district court or in this court, we express no opinion as to whether the court was required to sentence him within the revised Guidelines range calculated in the context of a sentence-modification proceeding under 18 U.S.C. § 3582(c)(2).

Quinn also argues that the "automatic application of U.S.S.G. §§ 1B1.10(b)(1) and 3D1.4 amounted to a denial of due process." As discussed above, however, Quinn's sentence modification was performed fairly and correctly. *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (noting that procedural due process requires fair implementation of procedures that result in deprivation of liberty). Amendment 706 benefitted Quinn less than it benefitted other defendants because Quinn was convicted of multiple crimes, including firearm crimes that the amendment did not affect. We therefore conclude that Quinn has failed to establish a violation of his rights under the Due Process Clause of the Fifth Amendment.

## III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.